## PALACE CORP. v. UNITED STATES.
### No. 49471.

United States Court of Claims.
March 3, 1953.

Leon Morris Shinberg, Washington, D. C., for plaintiff. Leo Fixler, New York City, was on the brief.

Frank J. Keating, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This case involves five different claims growing out of two contracts. One of the contracts called for the transportation, erection, and installation of 1,234 Palace Mobile Expansible houses for the housing project at Akron, Ohio. The other contract called for the manufacture of these houses.

Count I alleges a wrongful withholding of $32,504.26 of the contract price. This

sum was withheld by the defendant on the ground that leaky roofs, due to faulty construction, caused excess moisture in the mobile houses and resulted in substantial damage. Count I is closely related to Count V which has to do with the question of leaky roofs. We therefore go at once to the latter issue.

In Count V plaintiff claims it spent $56,-477.21 making repairs to the mobile houses, that these repairs were direccted by the defendant, that the conditions were not due to leaky roofs, or to any fault or responsibility on plaintiff's part, but were caused by condensation and the high humidity of the areas where the units were located, coupled with the nature of the materials specified due to war-time conditions, and by other causes, for none of which plaintiff was responsible. Plaintiff claims these repairs as extra costs.

Defendant claims that roof leaks had occurred with resulting damage to panels, electric fixtures, and other installations, and that plaintiff had guaranteed materials and workmanship.

Article 20 of the contract, which is quoted in full in paragraph 29 of the petition, stipulates, *inter alia,* that "the contractor shall guarantee each * * * unit against defective material and workmanship * *; roof leaks due to causes other than physical abrasion or tearing; and cracking, splitting, warping, and the rotting of wood structures," the guarantee to be effective for a period of one year from the date of final acceptance of the units.

The claims under Counts I and V were denied by the contracting officer and on appeal the decision was affirmed by the head of the agency.

In connection with Count III the petition states that in the course of excavation the plaintiff encountered extraneous matter consisting of concrete, brick, stone, steel and other articles which required the use of dynamite, handbars, air tools, and torches for their removal, and that the contour of the ground required additional skirting and higher berms, and that because of greater depth of foundations additional plumbing was required. Plaintiff claims

$78,404.96 extra costs consisting primarily of carpenter rate increases, extra earth berms and excess costs of foundations, sewer lines and water lines.

Three change orders were issued by the terms of which plaintiff was allowed the sum of $46,117.23 for soil conditions and extra depth of foundations. After these adjustments the plaintiff presented the claim for $78,404.96 additional. This claim was denied and on appeal the action of the contracting officer was affirmed by the Assistant Commissioner for Development.

Under Count IV plaintiff makes a claim for delay and change of sites for the mobile houses. It asserts that the defendant failed to provide a complete delivery schedule, failed to have sites available, delayed plaintiff by failing to provide suitable sites, by issuing and then changing notices to proceed, by changing and cancelling site locations, and compelling plaintiff to operate at times and under such circumstances and conditions that its costs were substantially increased. It claims the sum of $61,195.67 under this count.

The claim was submitted to the contracting officer who ruled that a number of modifications were made with the approval of the Plant Inspector; that certain of the modifications involved no change in contract values or amounts; that certain of these changes represented additions to or reductions from contract values or amounts; that in the aggregate those changes which represent additions to the contract values or amounts are reasonably offset or balanced by those which represent reductions from the contract values or amounts, and that no basis existed for increasing or decreasing the amount of the contract due to the modifications made pursuant to the change notices. The claim was rejected and on appeal the action of the contracting officer was affirmed by the head of the agency.

These various claims were resubmitted to the contracting officer by the Palace Corporation on October 31, 1945, and on November 27, 1945. The claims were rejected. Plaintiff appealed to the head of the department who rejected the claims on March 11, 1947.

On October 11, 1946, all of the claims were again resubmitted and reconsideration by the head of the department was requested by plaintiff's attorney. The head of the department reaffirmed his previous ruling in two decisions dated March 11, 1947.

On the question of the settlement of disputes the articles in the respective contracts were as follows:

Article 12 of Contract 102 is as follows:

"Disputes. Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties hereto. In the meantime the contractor shall diligently proceed with performance."

Article 15 of Contract 105 is as follows:

"Disputes. Except as otherwise specifically provided in this Contract, all disputes concerning questions of fact arising under this Contract shall be decided by the Contracting Officer subject to written appeal by the Contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the Contractor shall diligently proceed with the work as directed."

■■■ These various claims which we have discussed turn upon issues of fact. In United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 155, 96 L.Ed. 113, the Supreme Court said—

"* * * This Court has consistently upheld the finality of the department head's decision unless it was founded on fraud, alleged and proved."

Until the time of the decision in that case, this court had reviewed the contracting officer's decision when it was shown to be arbitrary, capricious, or so grossly erroneous as to imply bad faith, notwithstanding the parties had contracted that all matters of disputed fact might be decided by one of the parties to the contract. Such a provision we had understood called for the highest good faith on the part of the interested party making the decision.

The Supreme Court in construing the standard form of Article 15 has now limited the scope of review of decisions of heads of departments to cases in which positive fraud is alleged and proved. No fraud is alleged in this case. It would be a sheer waste of the time and energies of the court and the litigants to hear evidence beyond the limits of the blueprint clearly drawn by the highest judicial authority.

The disputed facts involved in Counts I, III, IV, and V have been finally determined by the head of the agency adversely to the plaintiff. That officer had authority to make such a finding. It is "so nominated in the bond."

■■ The claims arising under Count II fall in a different classification. The plaintiff alleges that prior to the execution of the contracts in the instant case several other contracts between the parties covering similar mobile units had been completed and that although they were silent as to Federal excise taxes otherwise payable on components contained in the units, exemption certificates were duly issued by defendant to plaintiff with respect thereto pursuant to a prior understanding, custom and practice between the parties to that effect; that Contract CPH 102 involved here was negotiated and executed by and between the parties upon the same understanding, to wit, that the price per unit excluded any charge for Federal excise taxes otherwise payable on water heaters, cooking and heating stoves specified as component parts of the house units and the defendant, consistent with that understanding custom and practice, would issue appropriate exemption certificates therefor, pursuant to authority vested in it by law; that after the manufacture, delivery, and acceptance of the 1,234 units plaintiff demanded and defendant refused to issue such exemption certificates, all of which was contrary to the understanding, custom, and practice of the parties; that the contract in that it is silent on these matters

failed to express the true intent and meaning of the parties and should be reformed to be consistent therewith.

Plaintiff appealed the adverse action of the contracting officer on these claims and on appeal his action denying the claims was affirmed.

Attached to the papers as Exhibit 20 is the following letter which was written to plaintiff's attorney, Leo Fixler, by O. Kline Fulmer who, as Assistant Director for the development agency, assisted in negotiating the contract in question:

"I have your recent letter with a copy of a letter from Commissioner Klutznick, regarding the question of excise taxes on the contracts between Palace Corporation and FPHA which were drawn up in Cleveland.

"As Assistant Director for Development, Region V, FPHA, I assisted in negotiating the contracts in question. The practice regarding excise taxes was the same for all vendors, namely that, they would be exempted from paying the tax in order to lower the total costs to the Federal government. Obviously, if they were required to pay excise taxes, they would have to pass those costs on to the government in their contracts.

"Therefore, the only practical arrangement was to give them tax exemption certificates and, I am sure, such a policy was also assumed in negotiating the Palace contracts in question, which in Commissioner Klutznick's letter are indicated as Contracts Nos. HA (MP) ph–121, 122, 111 and 404."

Plaintiff's dealings had been with Mr. Fulmer who acted for the Government in negotiating the contracts in question. When plaintiff requested exemption certificates Mr. Schwartz, the successor contracting officer, refused to issue them.

In these circumstances this decision was not purely a factual one, but at best is a mixed question of fact and law. It seems, therefore, proper that a hearing should be had on the claims involved in Count II. United States v. Milliken Imprinting Co.,

202 U.S. 168, 26 S.Ct. 572, 50 L.Ed. 980; Harrison Engineering & Const. Corporation v. United States, 68 F.Supp. 350, 107 Ct.Cl. 205.

The defendant's motion for summary judgment is granted as to Counts I, III, IV, and V, and overruled as to the matters involved in Count II. The case will be referred to a commissioner of the court for further proceedings limited to the claims set out under Count II of the petition.

It is so ordered.

HOWELL, MADDEN, WHITAKER and LITTLETON, Judges, concur.