297 F.2d 546
 COSMOPOLITAN MANUFACTURING CO.
v.
The UNITED STATES.
ARLENE COATS, a Partnership Consisting of Sidney Berkenfeld and Benjamin Prepon,
v.
The UNITED STATES.
 No. 123-60.
 No. 168-60.
 United States Court of Claims.
 January 12, 1962.
 Rehearing Denied in No. 123-60, April 4, 1962.
 
 Edwin J. McDermott, Philadelphia, Pa., for plaintiffs.
 Mary J. Turner, Washington, D. C., with whom was Asst. Atty. Gen. William H. Orrick, Jr., for defendant.
 PER CURIAM.
 
 
 1
 These are two separate suits to recover the difference between the original contract price and the price actually paid plaintiffs by defendant for the manufacture of overcoats for the Army. They are before the court on defendant's motions for summary judgment grounded on the allegation that the suits are barred by the statute of limitations. Plaintiffs have also filed motions for summary judgment.[1]
 
 
 2
 Since all the issues presented in the case of Arlene Coats v. United States, No. 123-60, are identically presented in the case of Cosmopolitan Manufacturing Co. v. United States, No. 168-60, and since a decision in the latter case is dispositive of both cases, we confine our opinion to a discussion of the facts and law involved in No. 168-60.
 
 
 3
 Plaintiff's petition alleges that in 1946, it entered into a contract with defendant for the manufacture of overcoats for the Army at a unit price of $17.50. Under the terms of the contract a revised price was to be negotiated after 40 percent of the overcoats had been delivered. If the parties could not agree upon a revised price, after the prescribed percentage of overcoats had been delivered, the contracting officer was authorized to determine the price to be paid. The parties could not agree; whereupon the contracting officer determined that a unit price of $15.00 was fair and reasonable.
 
 
 4
 Plaintiff appealed from this decision to the Army Board of Contract Appeals, which, on June 23, 1948, found $16.56 to be the proper unit price. The decision of the board was approved by the Secretary of the Army on June 25, 1948.
 
 
 5
 Plaintiff has been paid for 34,000 of the 35,000 overcoats delivered under the contract at a price of $16.56 per unit. Plaintiff's subcontractor manufactured the remaining 1,000 overcoats for which the price of $15.40 per unit, the price agreed to by the subcontractor, was paid. In this suit, plaintiff seeks to recover the difference between the price paid it for the 35,000 overcoats and the original contract price of $17.50 per unit.
 
 
 6
 It is clear that plaintiff cannot recover because its claim is barred by the statute of limitations.
 
 
 7
 Plaintiff grounds its claim on the alleged arbitrary and capricious action of the Army Board of Contract Appeals, and its approval by the Secretary of the Army. It follows that plaintiff's cause of action, if any, accrued at the time the appeals board acted, all events having occurred which were necessary to fix the liability of defendant and entitle plaintiffs to bring suit. Empire Institute of Tailoring, Inc. v. United States, 161 F. Supp. 409, 142 Ct.Cl. 165; Levine v. United States, 137 F.Supp. 955, 133 Ct. Cl. 774; Sese v. United States, 113 F. Supp. 658, 125 Ct.Cl. 526; Gray v. United States, 124 Ct.Cl. 313; Reliance Motors, Inc. v. United States, 81 F.Supp. 228, 112 Ct.Cl. 324.
 
 
 8
 But plaintiff says that it had no right to bring suit at that time because of the decision of the Supreme Court in United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113, holding that the courts did not have the power to review the decision of the head of a department unless it was alleged and shown that his decision was fraudulent, and plaintiff says it expressly exonerated defendant of fraud. However, that decision was rendered on November 26, 1951, more than three years after plaintiff's cause of action accrued on June 25, 1948. There is no question but that plaintiff could have brought suit at any time prior to the Wunderlich decision on the ground that the Secretary's determination was arbitrary, capricious, or so grossly erroneous as to imply bad faith. Silas Mason Co. v. United States, 90 Ct.Cl. 266. Cf. Palace Corp. v. United States, 110 F.Supp. 476, 124 Ct.Cl. 545, cert. denied 346 U.S. 815, 74 S.Ct. 26, 98 L.Ed. 342; Volentine and Littleton, Contractors v. United States, 145 F.Supp. 952, 136 Ct.Cl. 638.
 
 
 9
 Although the Wunderlich decision took away plaintiff's remedy of seeking review of the Army's decision on the ground that it was arbitrary and capricious, this remedy was restored by the Act of May 11, 1954 (68 Stat. 81), 41 U.S.C.A. §§ 321, 322. That Act did nothing more than this, that is, to restore this remedy. Volentine and Littleton, Contractors v. United States, supra. The fact that, in the interim between the Wunderlich decision on November 26, 1951, and the date of its restoration on May 11, 1954, plaintiff could not have pursued the remedy it now seeks to pursue, affords it no relief from the running of the statute of limitations, because plaintiff's cause of action first accrued more than three years prior to the Wunderlich decision. De Arnaud v. United States, 151 U.S. 483, 14 S.Ct. 374, 38 L.Ed. 244; Whitney's Admn'x v. United States, 18 Ct.Cl. 19; Marcos v. United States, 102 F.Supp. 547, 122 Ct. Cl. 641. Suit still had to be brought within six years from the date plaintiff's cause of action first accrued, which was no later than June 25, 1948.
 
 
 10
 Title 28 U.S.C. § 2501, as amended by the Act of September 3, 1954, 68 Stat. 1246, provides in pertinent part:
 
 
 11
 "Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.
 
 
 12
 * * * * * *
 
 
 13
 "A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases. * * *"
 
 
 14
 In Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306, the Supreme Court held that Congress in prescribing this limitation period meant just that period and no more and that even the existence of a state of war between this country and Japan, which prevented plaintiff from filing his claim, did not toll the running of the statute. Since plaintiff did not bring its suit until April 11, 1960, almost twelve years after its claim first accrued, it is clearly barred.
 
 
 15
 It is clear that Congress did not intend to grant any new right of action by the Act of May 11, 1954. In Volentine and Littleton, Contractors v. United States, supra, we held it merely intended to restore the status quo ante the Wunderlich decision. This purpose could not have been expressed more clearly than in the committee report accompanying the "Wunderlich" bill. H.R. 1380, 83d Cong., 2d Sess., states in pertinent part:
 
 
 16
 "The purpose of the proposed legislation, as amended, is to overcome the effect of the Supreme Court decision in the case of United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, [96 L.Ed. 113], rendered on November 26, 1951, under which the decisions of Government officers rendered pursuant to the standard disputes clauses in Government contracts are held to be final absent fraud on the part of such Government officers. * * *
 
 
 17
 "A principal change which the amendment [which became the Wunderlich Act] effects in S. 24 is to restore the standards of review based on arbitrariness and capriciousness. These have long been recognized as constituting a sufficient basis for judicial review of administrative decisions, a reference to capricious action on the part of a Government contracting official vested with discretionary power of decision being found as early as 1911 in the decision of the Supreme Court in Ripley v. United States, (223 U.S. 695, 32 S.Ct. 352, [56 L.Ed. 614]). * * * There is a wealth of judicial precedent behind these standards of review and it is the committee's belief that they should not be abandoned.
 
 
 18
 * * * * * *
 
 
 19
 "The committee foresees no possibility of the proposed legislation creating any new rights that a contractor may not have had prior to its enactment, with the exception of the standards of review therein prescribed. Under the terms of the standard disputes clause the decision of a contracting officer is final unless the contractor appeals within 30 days * * * [Emphasis supplied].
 
 
 20
 "The statute of limitations regarding claims against the United States is jurisdictional and prevents the consideration of a claim which is more than 6 years old. Claims less than 6 years old, and not heretofore filed in the courts may, if filed, receive the protection of the proposed legislation. In this way the basic requirement of the contract that an appeal be noted to the head of the department within 30 days, as well as the protection which the Government receives under the statute of limitations applicable to these matters, have been retained." [Emphasis supplied.] U.S.Code Cong. and Adm. News 1954, p. 2191.
 
 
 21
 Plaintiff seeks to amend its petition to assert as an alternative contention that the decision of the Board of Contract Appeals and the Secretary of the Army did not become final for some 10 or 11 years after the decision was made, because there was pending before the Board a motion for reconsideration. Thus, plaintiff says that the statute of limitations was tolled during this period.
 
 
 22
 The alleged motion consists of a letter from a successor contracting officer to the board calling the attention of the latter to the fact that 1,000 of the 35,000 units delivered under the contract were manufactured by plaintiff's subcontractor, which had agreed to accept a price per unit lower than that found by the Secretary. The board was advised that an amount representing the difference in price on the 1,000 overcoats was being withheld and it was, therefore, "requested that the decision of the Secretary of the Army be reconsidered." This letter was never acted upon; the board did not reopen the case; it did not disturb its former decision. The making of a request for reconsideration does not deprive the former decision of finality; it is the granting of the request that does so. This request was not granted, so far as the record shows.
 
 
 23
 Defendant's motions for summary judgment are granted; plaintiffs' like motions are denied; plaintiff's motion to amend its petition in case No. 168-60 is denied, and plaintiffs' petitions in cases Nos. 168-60 and 123-60 will be dismissed.
 
 
 24
 It is so ordered.
 
 
 
 Notes:
 
 
 [1]
 Plaintiffs subsequently moved for leave to withdraw their motions for summary judgment. We denied their motions for leave to withdraw on December 15, 1961