**P.L.S. COAT & SUIT CORP.**

**v.**

**UNITED STATES.**

**Arthur S. SACHS, as Trustee in Bankruptcy of Ansonia Garment Co., Inc., Bankrupt**

**v.**

**UNITED STATES.**

**Nos. 213-56, 513-56.**

United States Court of Claims.

Jan. 20, 1960.

Edwin J. McDermott, Philadelphia, Pa., for plaintiff in No. 213–56.

Alexander Boskoff, Washington, D. C., for plaintiff in No. 513–56.

Lawrence S. Smith, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

PER CURIAM.

In these cases plaintiffs seek to recover extra costs alleged to have been incurred in manufacturing raincoats under contracts with the Department of the Navy. Each plaintiff had two contracts under which claims have been made. Plaintiffs allege that their costs were increased because the raincoat material which was furnished by the Government was not in conformity with contract specifications and was otherwise defective.

Defendant has moved for summary judgments dismissing plaintiffs' petitions on the grounds (1) that plaintiffs' claims are barred because of their failure to comply with contract provisions relative to replacement of defective material, failure to obey the contracting officer's written instructions regarding such replacement, and failure to follow the disputes and appeals provision of the contracts; (2) that the decisions of the Armed Services Board of Contract Appeals (ASBCA) on questions of fact relating to the quality of the Government-furnished cloth which decisions were adverse to plaintiffs, should be accorded finality here; and (3) that irrespective of the aforementioned decisions, summary judgments should be granted defendant on the basis of independent documentary evidence now before the court in the form of affidavits and exhibits in support of its motions.

Plaintiffs urge recovery on two grounds: First, that defendant breached the contracts in its failure to furnish non-defective cloth, or second that under applicable contract provisions plaintiff is entitled to an equitable adjustment of the contract prices because of the defective cloth supplied.

With respect to one of the contracts in the PLS case, No. DA30–352–TAP–135, recovery must be denied on the grounds that plaintiff itself has failed to conform to the contract provisions. The applicable provisions are as follows: [1]

"Substitution of Government Furnished Property

"The Government reserves the right to substitute material in lieu of the material listed herein as 'Government Furnished Property', and in the event such substitution affects the cost of performance of this contract, it shall be treated as coming within the terms of Section 2 (changes) of the General Provisions hereof, and an equitable adjustment in price shall be effected in accordance with the provisions of that Section.

\* \* \* \* \* \*

Clause "A"—Government-furnished Property

"(a) The Government shall deliver to the Contractor, for use in connection with and under the terms of this contract, the property which the schedule or the specifications state the Government will furnish (hereinafter referred to as "Government-furnished Property"). The delivery or performance dates for the supplies or services to be furnished by the Contractor under this contract are based upon the expectation that Government-furnished property of a type suitable for use will be delivered to the Contractor at the times stated in the schedule or if not so stated in sufficient time to enable

the Contractor to meet such delivery or performance dates. In the event that Government-furnished property is not delivered to the Contractor by such time or times, the Contracting Officer shall, if requested by the Contractor, make a determination of the delay occasioned the Contractor thereby, and shall grant to the Contractor a reasonable extension of time in respect of such delivery or performance dates. The Government shall not be liable to the Contractor for damages or loss of profit by reason of any delay in delivery of or failure to deliver any or all of the Government-furnished property, except that in case of such delay or failure, upon the written request of the Contractor, an equitable adjustment shall be made in the delivery or performance dates, or price, or both, and in any other contractual provision affected thereby, in accordance with the procedures provided for in the clause of this contract entitled 'Changes'.

\* \* \* \* \* \*

"2. Changes

"The Contracting Officer may at any time, by a written order, and without notice to the sureties, make changes, within the general scope of this contract, in any one or more of the following: (i) drawings, designs, or specifications, where the supplies to be furnished are to be specially manufactured for the Government in accordance therewith; (ii) method of shipment or packing; and (iii) place of delivery. If any such change causes an increase or decrease in the cost of, or the time required for, performance of this contract, an equitable adjustment shall be made in the contract price or delivery schedule, or both, and the contract shall be modified in writing accordingly. Any claim by the Contractor for adjustment un-

[1] These provisions are taken from one of the contracts in the Sachs case, and the slight differences which appear in the comparable provisions in the other contracts here involved are immaterial for our purposes.

der this clause must be asserted within 30 days from the date of receipt by the Contractor of the notification of change: *Provided, however,* That the Contracting Officer, if he decides that the facts justify such action, may receive and act upon any such claim asserted at any time prior to final payment under this contract. Failure to agree to any adjustment shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled 'Disputes.' However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

\* \* \* \* \* \*

"12. Disputes

"Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall be final and conclusive: *Provided,* That if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive.

\* \* \* "

Under these provisions the Government upon proper notice was to have the opportunity to replace defective material, and/or provide for an equitable adjustment of the contract price. The need for a prompt request to the contracting officer is quite obvious. Both provisions make reference to the Changes provision in the contract which provides that any claim by the contractor for adjustment under this clause is to be made within 30 days from the date of receipt of the notification of change by the contractor. However, the Changes provision further states that the contracting officer if he decides the facts warrant it may receive and act upon any such claim at any time prior to final payment. It also provides that failure to agree shall constitute a dispute concerning a question of fact within the Disputes clause of the contract.

■ Deliveries under this contract were completed May 15, 1953, and final payment was made June 18, 1953. Plaintiff's claim directed to the contracting officer was made on January 12, 1954, some seven months after final payment. It was rejected on the very same grounds which we find applicable here, i. e., that it was untimely under the contract provisions. The ASBCA, despite the Government's assertion of untimeliness, rendered a decision against plaintiff on the merits of the claim. However, the question as to whether plaintiff's claim was timely and in conformity with the contract provisions is one of law which may be decided here. Poloron Products, Inc. v. United States, 116 F.Supp. 588, 126 Ct.Cl. 816, 824. We hold it was not, and plaintiff's petition with regard to its claim under this contract must be dismissed. Adherence must be had to those provisions of Government contracts which provide the mechanics for settling disputes on the administrative level. United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192; United States v. Blair, 321 U.S. 730, 735, 64 S.Ct. 820, 88 L.Ed. 1039.

We now pass to a consideration of plaintiffs' claims under the remaining contract in the P.L.S. case and the two contracts in the Sachs case. The ASBCA board in denying plaintiffs' appeals found that the Government-furnished cloth met specifications, and while it did present difficulties in the manufacturing process, it was suitable for use in manufacturing the raincoats called for by the contracts.

Under the Disputes clause of the contract, supra, and the so-called Wunderlich statute, 68 Stat. 81, 41 U.S.C.A. § 321, the board's decision is "final and con-

clusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence."

■ In actions where the decision of the board is contested the plaintiffs must as we stated in Volentine & Littleton v. United States, 145 F.Supp. 952, 954, 136 Ct.Cl. 638, "do more than repeat the derogatory language of the statute." Facts must be alleged which if proved will show that under the language of the above statute the board's decision cannot stand.

Taking the position that the petitions fail in this regard and that therefore the board's decision should be accorded finality, defendant has moved for summary judgments on the basis of the board's decision, as well as on the basis of independent documentary evidence attached as exhibits and affidavits to its motions.

Plaintiffs' position in urging a denial of defendant's motions is in the first instance one of reliance on the decision in Volentine & Littleton v. United States, supra, under which they maintain they are entitled to a trial *de novo* on their claims, thus preventing the disposition of claims such as theirs on summary judgment.

The holding in Volentine & Littleton was to the effect that in these contract cases in which a decision by the head of the department, or his duly authorized agent or board, under the standard disputes clause is put in issue, the proceedings in the suit here were not to be restricted to the record made before the board nor was the court in passing on the merits of the contractors' claims to be restricted to just a consideration of the record made before the department head.

■ The decision was therefore on a much narrower ground than the one suggested by plaintiffs. It certainly does not have as its result the elimination of summary judgment procedure in Government contract cases, and we do not now so hold. Absent a showing of a genuine issue of a material fact summary judgment would be in order. In making such a determination the decision by the board and the record made before the board, together with any appropriate additional data which may be submitted are to be considered.

In plaintiff's brief in opposition in the Sachs case several arguments are made against acceptance of the board's decision while in the P.L.S. case plaintiff's brief makes one principal argument in opposition which is directed at least initially toward showing the existence of a genuine issue of material fact requiring a trial. However, as was true with regard to their petitions plaintiffs' briefs were vague in setting forth just what the nature and source of their evidence would be at a trial in this court. As a result plaintiffs during oral argument (May 5 and 6, 1959) were granted permission to file affidavits directed toward the question as to just what would be the nature of their evidence in support of their arguments against acceptance of the board's decision.

In the Sachs case plaintiff filed three such affidavits. The first is one by plaintiff's present counsel in which he states that he made a request to defendant to inspect certain Navy files and that he received a reply from the defendant that a search for the files would be made and if in existence would be made available to him. He further states that as of the date of the affidavit, May 25, 1959, he had not heard further from the defendant. On June 30, 1959, plaintiff's counsel was advised by defendant that the records requested were available for inspection and on September 14, 1959, plaintiff filed copies of documents presumably obtained as a result of this inspection. The remainder of this affidavit is argumentative in nature restating arguments made in the brief.

The second affidavit is that of Lou Orons, the former president and general manager of plaintiff. Mr. Orons testified on plaintiff's behalf before the board and with this affidavit states that he attended the board hearing only on the day

that he testified and he was therefore not present when Mr. Rozen, a Government inspector, who inspected the cloth at plaintiff's plant, testified for the Government. Mr. Rozen had testified that he had found the cloth satisfactory and that Mr. Orons had agreed with him. Mr. Orons by this affidavit states that if a trial is held here he will now testify that he did not so agree with Mr. Rozen but that on the contrary will state he called to Mr. Rozen's attention the defective nature of the cloth.

The third and final affidavit filed is one by Emil Gubin who was counsel for both Sachs (the Ansonia Garment Co.) and P.L.S. in the proceedings before the board. Mr. Gubin states that he was handicapped in his presentation before the board because of lack of funds, i. e., Ansonia being in bankruptcy necessitating the use of affidavits instead of arranging for the appearance of certain witnesses, as well as being unable to obtain either the testimony or affidavits of still other individuals. Although not stated the implication is that on trial here arrangements would be made for the appearance of all these witnesses.

The use of affidavits in proceedings before the board is permitted by its rules; the testimony of additional witnesses was characterized by plaintiff's counsel before the board as being merely cumulative of evidence already given by those witnesses who did testify or of the statements presented by affidavit. The board's rules provided by the means of depositions the method by which plaintiff could have obtained the testimony of the Government personnel it now claims would have supported its claims, but plaintiff made no effort to make use of this procedure; a hearing in New York in addition to Washington was available under the board's rules, but no such request was made except one conditioned on the Navy bearing counsel and witness expenses; and certainly plaintiff's former president's statement that if given the further opportunity of testifying here he would now contradict the testimony given before the board by a Government witness is insufficient.

Plaintiffs also indicate as implied by the affidavit of former counsel, Mr. Gubin, that they were prejudiced in their presentation before the board because the cases were consolidated along with a third contractor (Expert Company) for hearing before the board and apparently that in so consolidating them the board acted arbitrarily. The consolidation was made at the request of plaintiffs' former counsel and his statement in the present affidavit that the facts in each were not similar is directly opposite to the position he took in his letters to the board prior to the hearing calling the board's attention to the similarity of the claims and requesting that as a matter of expediency they be consolidated for hearing.

The finality of the board's decision as permitted under the language of the disputes clause, as well as under the Wunderlich statute is not to be defeated nor the existence of a material dispute of fact to be shown merely by plaintiff's desire to have a trial here in order to correct errors and omissions which may have been made in the proceedings before the board.

The documents which plaintiff filed on September 14, 1959, reflect correspondence which passed back and forth between plaintiff and the Navy and memoranda within the Navy itself regarding plaintiff's complaints as to the condition of the cloth. As these documents show these complaints led to the dispatching of Mr. Rozen, whose report is included in these documents, to inspect the cloth at plaintiff's plant. They raise no new issue nor do they provide anything which is not present or touched upon in either the record before the board or in defendant's motions and supporting data here. It is not disputed that plaintiff made complaints during the period the raincoats were being manufactured.

In the P.L.S. case three affidavits are supplied by plaintiff's present counsel; one of these is merely argumentative in nature and the other two relate to counsel's inspection of certain cloth which the Navy now has in storage. An affidavit executed by one Joseph DiMeo also

406

deals with this inspection. Another affidavit filed is one by Rose Navarra, an employee at plaintiff's plant which merely states that a complaint with respect to the cloth was made to a Government inspector. Plaintiff's final affidavit is by Oscar George Hagen, a Government inspector, who states that having received complaints from plaintiff he made an inspection of the cloth. He states no conclusion.

Plaintiff has in addition to these affidavits also filed copies of two decisions by the ASBCA in support of its argument that the board will not accept affidavits for the purpose of supporting a finding of fact. This is in way of support of plaintiff's position that since a good portion of its record made before the board was presented by affidavit, its presentation before the board was ineffectual. This argument is present in both cases. These opinions by the board state no such general rule but merely hold that under the circumstances of those two cases the affidavits supplied were insufficient to support the findings arged by the petitioners. As mentioned above, the board rules expressly provide for the use of affidavits.

As with the case of the affidavits in the Sachs case, we find nothing in these which raises an issue of fact with regard to the Board decision under the standards found in the Wunderlich statute, i. e., grossly erroneous, arbitrary, capricious, or not supported by substantial evidence.

The argument by plaintiff in the P.L.S. case which was evidently not stressed before the board is the one dealing with the some 300,000 yards of defective cloth which the Burlington Mills Company furnished to the Navy. It was the type used under these contracts and plaintiff's position, its really chief one in seeking a trial and the overturning of the board's decision, is that some of this cloth was supplied to it in its performance under this contract. Plaintiff alleges that it is only by the use of the call and dis-

covery procedures permitted under this court's rules that this fact can be resolved, and it therefore constitutes an issue of fact which can only be resolved after discovery procedures and trial. Plaintiff has already had the benefit of such discovery and call procedure. The result of these proceedings has been that plaintiff has failed to uncover any evidence or possible source of evidence which would support a finding to the effect that any of this cloth was supplied to it.

We likewise find no merit in plaintiff Sach's position that the board's decision is defective because it was based for the most part on its decision in the appeal of Harlem Mfg. Co., which appeal presented an identical claim under a similar raincoat contract. The board did so upon the finding that the evidence in both appeals was similar in all material respects, and therefore found no occasion to state its findings on plaintiff's appeal in any different form. This of course would raise a question as to propriety of the board's decision if as a matter of fact the evidence in the two cases was dissimilar. The plaintiff points to only two instances of dissimilarity. First, that there was testimony in the Harlem appeal to the effect that the contractor had been notified prior to the award that the cloth would be difficult to work with and, second, that it appeared that Harlem desired the contract for reasons other than profit. As to the first, no finding with respect to this prior notice was made by the board and therefore it is not even mentioned in the board's opinion, and the second is immaterial. While the board did find that Harlem contemplated production at cost,[2] no mention or reliance thereon is made in its opinion. In addition, there is nothing in the board's opinion which would indicate that the claim was decided other than on its merits.

It is quite apparent that the cloth involved met specifications and was suitable for the manufacture of raincoats. The raincoats in the quantity called for

2. Harlem's option to purchase larger plant facilities was conditioned on its increas-

ing its volume, hence its desire to acquire the raincoat contract.

under the contracts were manufactured by the plaintiffs, delivered to and accepted by the Navy and payment for them was made. The board did find that there were instances of defects, but that all were minor in nature and in number were no greater than was to be expected in the manufacturing of cloth in the quantity here involved. Plaintiffs' real complaint rests on the fact that it experienced greater difficulty in processing the raincoats from the cloth than was contemplated. This resulted in the alleged higher costs.

The cloth was new and had been developed by several mills at the request of the Navy in order to improve the quality of its raincoats. Contrasted with commercial raincoat material, difficulties were to be expected and in fact were encountered by all the contractors who held these contracts. Some adjustment of the manufacturing process was required. That this adjustment was not impossible is seen by the fact that all of the contractors except four were able to satisfactorily manufacture the raincoats within the costs contemplated by their contracts. Defendant has furnished affidavits by officials of several of the other companies who held contracts using the identical cloth stating that while minor flaws were present, only a very small amount of the cloth was found to be defective, and their experience with the contracts was satisfactory. Whether the plaintiffs miscalculated their costs, were merely more inefficient than the others or were handicapped for other reasons we do not know. The ASBCA while recognizing the fact that difficulties were present found that they were not insurmountable and did not constitute a change which would warrant an equitable adjustment of the contract prices. That decision is found to be free of any arbitrary or capricious action, is amply supported by the record made before the board and the independent or additional sources of evidence to which the affidavits and exhibits filed here by the parties have reference tends to add to the substantiality of the board's decision rather than to subtract from it.[3]

 It is of course impossible to arrive at any general rule with regard to the disposition of cases of this nature on summary judgment and no attempt to do so has been intended here. Each case must be viewed on the basis of its own facts and circumstances. In each case we must decide whether there is any reasonable prospect that a trial would eventuate in a decision contrary to the summary judgment sought.

Plaintiffs have neither offered nor indicated the source of anything requiring a rejection of the board's decision on the grounds permitted under the Wunderlich statute. Disputes as to material facts have been alluded to by the plaintiffs, but none exist which have not been erased either by the board's decision or by the presentation made here by the defendant in support of its motions for summary judgment.

Plaintiffs' petitions will be dismissed. It is so ordered.

---

3. The Independent evidence presented by defendant consists largely of various inspection and receiving reports prepared by both plaintiffs and the Navy, as well as affidavits by Government inspectors, all showing the cloth with minor exceptions to be satisfactory.