Robert L. GUYLER

v.

The UNITED STATES.

No. 19–60.

United States Court of Claims.

March 6, 1963.

Whitaker, Judge, dissented.

Teairl W. Lewis, San Antonio, Tex., for plaintiff. Morriss, Morriss, Boatwright & Lewis, San Antonio, Tex., was on the brief.

David V. Anthony, Washington, D. C., with whom was Joseph D. Guilfoyle, Acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

JONES, Chief Judge.

Plaintiff sues for the value of extra work which he alleges he was required to do in completing a construction contract. This work he asserts he was not required to do by the terms of the contract.

In April 1956 plaintiff entered into a contract for the construction of facilities at Ozona, Texas, consisting of 12 buildings and utilities.

The standard form contract with certain additions contained certain provisions which are set out in detail in findings 1, 2, and 3. The main issue turns upon whether the contract required the painting of the interior walls of masonry. The plaintiff contends that by the terms of the contract he was to finish the buildings and to paint the exterior and the woodwork of the interior, but that the contract and specifications required only the interior masonry walls of the operations room to be painted. Paragraph 27–8 of the specifications specifies that interior areas to be painted should include all wood, metal, concrete masonry units, gypsum board, cement-asbestos board, and similar surfaces, except where otherwise specified. Paragraph 27–8(g) of the specifications, around which most of the controversy revolves, is as follows:

"*Masonry Surfaces.*—Interior exposed masonry surfaces, indicated on the drawings to be painted, shall be painted in accordance with the attached Figure [1]."

It should be noted that this section refers to "attached Figure 1." Reverting to Figure 1, it is found that it did not

specify what surfaces were to be painted. However, one of the drawings clearly and specifically provided that the walls behind and beside the platform in the operations room of the Operations Building should be painted black. This drawing did not provide for the painting of any other interior masonry walls. No other sheet of drawings in the entire original set of drawings designated any other interior masonry walls to be painted.

When he made his preparations for bidding, plaintiff obtained bids from subcontractors for the painting work. The lowest bid figure for the painting was submitted by George E. Biediger & Son, a firm with more than 20 years' experience in paint contracting. The plans, drawings, and specifications were furnished in advance to the subcontractor. After examining these, the subcontractor based its estimate and submitted a bid on its interpretation of the contract, drawings, and specifications as calling for painting the interior masonry of only one room, the operations room, a portion of which was designated to be painted black in the drawing referred to above.

In submitting his bid on the entire contract, plaintiff used the Biediger bid as the basis for that part of his bid covering painting. In June 1956, after the work had been started but before it had progressed to the point of painting the interior masonry walls, the resident engineer forwarded to plaintiff for pricing a number of changes in the specifications in the form of proposed supplemental specifications accompanied by revised drawings. Plaintiff's project manager went over the proposed changes in detail to determine what additional costs would be involved in the supplemental specifications. One of the numerous changes outlined in the supplemental specifications was to be made in paragraph 27–8(g), as follows:

> Delete ", indicated on the drawings to be painted,".

Plaintiff accordingly submitted a quotation of price revisions resulting from the supplemental specifications totaling $11,146.99 additional. No price was quoted for any additional painting of interior masonry walls.

On August 20, 1956, modification No. 3 was issued by the contracting officer and executed by plaintiff's authorized representative. This modification provided for an increase in the contract price of $11,146.99.

Plaintiff executed and accepted the modification No. 3 without any reservation, qualification, or protest. His representative did not attach any significance to the deletion of the particular phrase. The contracting officer apparently attached no significance to the fact that the plaintiff's detailed breakdown for the work under modification No. 3 did not include any amount for interior masonry painting, nor did the contracting officer call the matter to the plaintiff's attention. He stated the basis of his action later in his findings of fact, which included the following:

> "1. The phrase 'indicated on the drawings to be painted' in subparagraph 27–8(g) was deleted from the specifications only to clarify the painting requirements.
>
> "2. This phrase was meaningless since the drawings are not intended to provide painting instructions. The painting requirements are contained in the specifications as is evident by paragraphs 27–8(a), 27–9 and 27–11, all of which indicate painting of interior masonry surfaces."

This interpretation of the specification, however, was not communicated to plaintiff until after the disagreement about the requirements of the contract.

Some two months later plaintiff was advised by the defendant's resident engineer that all interior masonry walls in the various buildings covered by the contract were required to be painted. This information was conveyed by plaintiff to his painting subcontractor, who refused to paint any interior masonry walls except the interior masonry walls of the Operations Building which were designated as a painting requirement in the contract drawing. His reason for re-

fusing to do the painting was that the contract did not require the painting of any other interior masonry walls, and that his bid did not include the cost of painting any other interior masonry walls.

Plaintiff then notified the defendant of the position taken by the subcontractor and stated that if the additional work was required he should be compensated for it as extra work. He listed the painting items for the interior masonry walls in the 11 buildings on the project. The engineer replied that the painting was required under the terms of the contract as revised and that plaintiff's request for additional payment had been forwarded to the contracting officer for consideration. The plaintiff, under protest, had his subcontractor paint the additional interior masonry walls in dispute and paid the subcontractor for the performance of that work the sum of $3,496.14, which is found to be fair and reasonable compensation for the painting of the interior masonry walls other than the walls in the Operations Building.

A conference was held by the contracting officer and his representatives with representatives of the plaintiff in February 1957, to consider plaintiff's claim for equitable adjustment under the "Changes" clause in the general provisions of the contract. At that meeting plaintiff's representatives took the position that under the terms of the original contract, · paragraph 27–8(g) of the specifications and the accompanying drawings specifically limited the painting of interior masonry walls to those so shown on the drawings. The contracting officer disputed this, claiming that before it was modified, the contract required the painting of all interior masonry walls. However, he stated that, if he was in error, there had been a mutual mistake and that in such event plaintiff's right to reimbursement for the cost of the additional painting would not be prejudiced by the fact that plaintiff had executed modification No. 3.

The claim for an equitable adjustment was denied December 4, 1956, by the contracting officer, the decision being in writing and containing his findings of fact. This decision was transmitted to the plaintiff under date of February 28, 1957.

An appeal was taken to the Corps of Engineers Claims and Appeals Board which denied the claim November 29, 1957. Although the Board did not expressly disagree with the contracting officer's assertion that the original contract required the painting of all interior masonry walls, the Board pointed out. that his position would have been more tenable were it not for the facts that the contract drawing in question gave some meaning to the wording of the specification and that other specifications. dealing with the painting of the exterior masonry walls were explicit on painting requirements. However, the Board held that change order No. 3 removed any doubt as to the meaning of the contract and declined to grant relief on the ground that it had no authority to reform a contractual instrument.

Appeal then was taken to the Armed Services Board of Contract Appeals. A portion of its decision is set out in finding 20. In denying the appeal, the Board expressed regret "that poor draftmanship contributed to the mistake made by appellant's subcontractor." Nevertheless, the Board concluded that the contract as worded prior to the issuance of modification No. 3, if carefully read and properly interpreted, required the additional painting.

Thus, one appeals board held that modification No. 3 removed any doubt as to the requirement that interior masonry walls were to be painted. The second appellate board concluded that the original contract, while it was poorly drawn, should be construed to require the additional painting and that modificatoin No. 3 made no such change in the requirement as would form a basis of recovery. The contracting officer held that the change in language was meaningless, while the resident engineer said that the contract, *as revised*, required the additional painting.

One is reminded of the John G. Saxe story of the six blind men of Indostan who went to see the elephant just to find out what the animal was like. The first fell against his side and reported, "The elephant is very like a wall." The second, feeling of his tusk, stated it was clear that an "elephant is very like a spear." The third one, taking hold of the squirming trunk, spake, "I see the elephant is very like a snake." The fourth, getting hold of the knee, said, "It is very like a tree." The fifth, catching the ear, said it was "like a fan." The sixth began to grope, and grasping the tail, "I see," quoth he, "the elephant is very like a rope." The Saxe poem ends this way:

"And so these men of Indostan
Disputed loud and long,
Each in his own opinion
Exceeding stiff and strong,
Though each was partly in the right,
And all were in the wrong!"

This confusion in the interpretation of the contract and specifications is to be contrasted with the uniform construction of the contract documents by the subcontractor and prime contractor, as well as by the defendant's resident engineer, who felt that until the contract was revised it was to be interpreted as contended for by the painting subcontractor and by plaintiff. These three men at the site of the work were faced with the practical problem of reading through hundreds of pages of specifications, gleaning the specific from the general, and then deciding what work was to be done. The drawing No. SWD 60–02–01, sheet 1 of 12, sequence 115, did not provide for the painting of any other interior masonry walls. No other sheet of the drawings in the entire original set of drawings designated any other interior masonry walls to be painted.

 Although the contract makes the decision of the Armed Services Board of Contract Appeals final as to questions of fact, the issue presented here involves a question of law because it requires an interpretation of the language of the contract. It must be remembered that the contract and specifications were prepared by representatives of the defendant and that any doubts and ambiguities must be resolved against it.[1] We agree that the specifications take precedence over the drawings, but the phrase "except where otherwise specified" in paragraph 27–8(a) of the specifications dealing with interior painting and the phrase "indicated on the drawings to be painted" in paragraph 27–8(g) of the same specifications and specific provisions to which more general language must yield. In order for these quoted words to have any meaning, it was necessary for the contractor to resort to the drawings to which he was specifically directed by the very language of the specifications.

After considering the several provisions of the specifications and drawings in the light of the briefs that the parties have submitted, we conclude that the interpretation by the plaintiff and his subcontractor as to the painting requirements on interior masonry walls is a reasonable one and that any interpretation to the contrary would require a resolution of doubtful and ambiguous language in favor of the party who prepared the documents.

 The question then reverts to the effect of the deletions made by modification No. 3 which, among other changes, eliminated from paragraph 27–8(g) of the specifications the phrase "indicated on the drawings to be painted." This negative provision was described by the contracting officer as meaningless, since he considered that it did not change the painting requirements in any way. It was equally without significance to the plaintiff, particularly since it was not accompanied by any reference as to its purpose.

The elimination of a few words from a section of the specification that was characterized by the Armed Services Board of Contract Appeals as poor draftsmanship would appear to be an attempt to

1. Garrison v. United States, 7 Wall. 688, 690, 19 L.Ed. 277.

modify language that the contracting officer thought needed clarification.

When the plaintiff submitted his price quotations for the changes covered by modification No. 3, he sent a detailed breakdown for each item of work but he included nothing for interior masonry painting. This omission must have been clear to the contracting officer, who examined the breakdown submitted before he approved the plaintiff's bid for the additional work. In spite of this, plaintiff's attention was not called to the matter by the contracting officer—again for the reason that this official felt that the deletion quoted above did not change the contract in any way. Perhaps it was for this reason that at the conference held to consider plaintiff's request for reimbursement, the contracting officer stated that if his interpretation of the original contract and the deletion was in error, there was a mutual mistake and that plaintiff's claim would not be prejudiced by his acceptance of modification No. 3.

The painting of the interior masonry walls, other than the operations room, was extra work not provided in the original contract. The contracting officer did not consider that the deletion changed the terms of the contract. If the language deleted had the effect of changing the obligation, then it was a change order calling for extra work for which an adjustment should be made in the contract price under the "Changes" provision, paragraph 3, of the contract. In either event it was extra work for which plaintiff should be paid.

It will be noted that while section 3 of the contract contains the usual provision that any claim for an adjustment under a change order must be asserted in writing within 30 days from the receipt by the contractor of the notification of change, the latter clause has attached to it the following modifying proviso:

> "*Provided, however,* That the Contracting Officer, if he determines that the facts justify such action, may receive and consider, and adjust any such claim asserted at any time

prior to the date of final settlement of the contract."

This proviso is attached as a qualifying part of the 30-day notification requirement.

The contracting officer was hundreds of miles away. As soon as plaintiff learned that the contracting officer intended to require the plaintiff to paint the interior masonry walls, he immediately filed a claim for pay for the extra work. These facts clearly called for the contracting officer to make an adjustment under the plain terms of the proviso. The ends of justice required that he do so. If the facts of this case do not justify the use of the quoted proviso, it is difficult to conceive a set of circumstances that would.

In the light of the entire record, we find that plaintiff is entitled to recover on his claim for the additional painting, the reasonable cost of which is not in issue. Judgment will be entered for plaintiff in the sum of $3,496.14.

DAVIS, Judge (concurring in the result).

I agree that the contract, as originally written, did not provide for painting the interior masonry surfaces (except for some in the operations room). The general direction in specification 27–8(a) for painting "concrete masonry units" (among other things) contains the qualification "except where otherwise specified"; this general paragraph must therefore yield to specific paragraph 27–8(g) declaring, in effect, that the only interior exposed masonry surfaces to be painted are those indicated on the drawings. What ambiguity there may be should be resolved against the Government, as the court points out. This contract, like that in Beacon Construction Co. v. United States, Ct.Cl., 314 F.2d 501 also decided this day, incorporates an Article 2 directing the contractor to bring to the Contracting Officer's attention discrepancies in the specifications and drawings, but the cases differ significantly in at least three ways: (a) The discrepancy here, if one existed at

all, was not of the gross and patent character with which the court is dealing in Beacon Construction Co., but could, rather easily, be resolved by reading the contract as a whole; (b) the possible ambiguity came to light only after the contract was signed, not before it was consummated; and (c) that ambiguity was obviously apparent to the contracting officer prior to the time plaintiff discovered it. In this case, accordingly, there was no breach by the contractor of the requirements of Article 2.

I am more troubled, however, than is the court by modification No. 3 which indisputably required all interior surfaces to be painted. The plaintiff, who is an experienced contractor, should not be excused in court because his representative did not understand the plain agreement he was signing, any more than the Government would be relieved of an obligation if its contracting officer inadvertently agreed to something he soon regretted. "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say, that he did not read when he signed it, or did not know what it contained." Upton v. Tribilcock, 91 U.S. 45, 50, 23 L.Ed. 203 (1875). Nor was the Government at fault for not realizing that plaintiff had signed the modification without understanding its import. Since the original contract was not absolutely clear and the problem had not yet arisen, the contracting officer could well think that plaintiff understood the contract in the same way as the Government and acquiesced in the "clarifying" amendment, or even that the plaintiff was willing to absorb the costs of any additional painting in view of his over-all remuneration. Under the accepted objective theory of contract formation there was a valid agreement and no such mutual mistake, or palpable unilateral mistake, as to the facts which should lead to rescission or reformation.[2] Cf. Vakas v. Manuel, D.C.,

Cir., 316 F.2d 369. This result would not be altered by the circumstance that after the modification had been signed the contracting officer told plaintiff that, if the original contract failed to require painting of the interior masonry walls, the modification had been made under a mutual mistake. This after-the-event statement was simply an erroneous legal conclusion by the contracting officer which was not binding on the defendant.

Nevertheless, I am led to concur in the court's judgment because the contracting officer treated modification No. 3, with respect to the painting, not as an independent binding agreement but as a contract-change subject in full to the regular procedure for changes. The modification was actually a change in the original contract which caused an increase in the amount due and which should therefore have occasioned an equitable adjustment. The contracting officer, however, did not make an equitable adjustment (because he incorrectly believed that no increase in cost was being added). The plaintiff, in turn, did not make a timely claim under the Changes article, but he did file an untimely request. The Changes article expressly permits the contracting officer, in his discretion, to consider any such belated claim up to the date of final settlement. As the findings show, this contracting officer treated plaintiff's claim in exactly that fashion. He told plaintiff that modification No. 3 would not prejudice his claim; he considered the claim on its merits and did not deem the plaintiff's acceptance of the modification to be conclusive; and he mistakenly decided that the change was only a formal one, not increasing the amount due under the contract. Thus, the contracting officer exercised his discretionary authority to weigh plaintiff's prayer for additional compensation under the Changes article (even though he was not compelled to do so), and chose to deny the claim on its merits, despite the existence of the modi-

---

2. In Beacon Construction Co. v. United States, Ct.Cl., 314 F.2d 501, we are today refusing the Government's request to disregard a modification, agreed to by both parties, which later turned out to have been improvident on the Government's part and which it tried unilaterally to rescind.

fication.[3] In those circumstances, it is proper under the contract for us to deal with the issue just as if plaintiff had never accepted modification No. 3 but all along had demanded extra compensation. In that posture he would be entitled to recover, since the contracting officer's denial of the equitable adjustment rested on an erroneous interpretation of the original contract.

WHITAKER, Judge (dissenting).

I agree that, as originally drawn, the contract required the painting only of those interior masonry surfaces which were indicated on the drawings. However, after the words, "indicated on the drawings to be painted", had been eliminated, the portion of the contract pertinent to the issue before us read:

"*Masonry surfaces.*—Interior exposed masonry surfaces shall be painted in accordance with the attached Figure 1."

This was a modification of the contract to which both parties agreed. As so modified, there can be no doubt that such a contract required the plaintiff to paint all interior exposed masonry surfaces.

As the majority opinion states, the resident engineer, in June 1956, after the work had started, forwarded to plaintiff a number of changes in the specifications and requested from him a bid covering the proposed changes. Among the changes proposed was the deletion of the words, "indicated on the drawings to be painted," from the provision of the specifications with reference to painting interior exposed masonry surfaces. Upon receipt of this request, plaintiff submitted a certain figure, which the Government accepted. From this there resulted a contract between the parties which required plaintiff to paint all interior masonry surfaces, unless there was a mutual mistake of fact.

Plaintiff does not deny that he knew these words had been deleted, but he says he did not understand the significance of this. Why he did not understand it, I am at a loss to understand. All he had to do was to read this provision of the specifications with these words stricken. Anybody—certainly a contractor of the experience of this plaintiff—reading this provision of the specifications with these words deleted, would know that the contract required that all interior masonry surfaces should be painted. The long and short of the matter is plaintiff was careless. We cannot reform a contract because a party did not exercise due care in reading it.

But, even if plaintiff made an excusable mistake, we do not think the contracting officer was chargeable with knowledge thereof. It does appear that the contracting officer knew that plaintiff had not set down any specific sum for the extra painting which the modification required; but, it still does not appear that the contracting officer was aware that the plaintiff did not understand that he would be required, under the modified contract, to do more painting than he had originally contemplated. Unless the contracting officer knew this, there was no mutual mistake of fact. The contracting officer may have thought that the plaintiff was willing to absorb the cost of doing the additional painting, or he may have thought the plaintiff figured on painting all the interior masonry walls in the first place. The plaintiff never told him, and he had no way of knowing, why the plaintiff failed to include any specific sum for the additional painting. He never knew that the plaintiff was unaware that he was to be required to do more painting under the modified contract than he had originally contemplated; or, if so, why he did not include a specific figure for this work.

This is not a case for an equitable adjustment under the changes article of the contract. The party had already agreed on the adjustment, after the contracting

---

3. Once the contracting officer exercised his authority to consider the belated claim on its merits (under the Changes article), the appellate administrative bodies could no longer stand on modification No. 3 alone. Cf. P.L.S. Coat & Suit Corp. v. United States, 180 F.Supp. 400, 403, 148 Ct.Cl. 296, 300–301 (1960).

officer had proposed the changes to be made and had asked the plaintiff for a bid on those changes and the plaintiff had submitted his bid. The result was a modified contract, agreed to in advance of doing the work.

In my opinion plaintiff is not entitled to recover.