**UNITED STATES of America,**
**Appellant,**

**v.**

**PICKETT'S FOOD SERVICE, Appellee.**
**No. 21929.**

United States Court of Appeals
Fifth Circuit.
May 6, 1966.

Edward L. Shaheen, U. S. Atty., Shreveport, La., Morton Hollander, Florence Wagman Roisman, David L. Rose, Attys., Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Attorneys, Department of Justice, Washington, D. C., for appellant.

Roy M. Fish, Springhill, La., for appellee.

Before JONES and THORNBERRY, Circuit Judges, and SLOAN, District Judge.

THORNBERRY, Circuit Judge:

Appellee brought this action under the Wunderlich Act (41 U.S.C. §§ 321, 322), seeking judicial review of a ruling by the Armed Services Board of Contract Appeals, which ruling affirmed the decision of a contracting officer. Appellee had sought an equitable adjustment under a standard disputes clause in a contract with the Government, but the contracting officer's award was less than that claimed by appellee.

Appellee, a catering firm, successfully bid on a government contract for serving food at Hickam Air Force Base, Hawaii. Under the contract, appellee agreed to serve an estimated 672,000 meals from July 1, 1960 to June 30, 1961. The contract provided that if in any month the number of meals served varied within 30% of the estimate (i.e., from 70% to 130%), the contract price would be adjusted in accordance with a specified mathematical formula. Under the formula, the unit price increased as the number of meals decreased, but the total price decreased as the number of meals served decreased.[1]

The contract also provided, in paragraph 1(c):

"If the number of meals served in any calendar month (to other than contractor personnel) varies from the estimated requirements for the month by more than 30% of such requirements, the contractor and Contracting Officer will negotiate an equitable adjustment in the contract price for that month in the manner provided in the 'Changes' clause of this contract."

1. The formula was as follows:

| If actual meals served during month is following percent of estimated meals for month | Price for meals served will be the following percent of basic contract price subject to limitation in Column 3 | Total payment shall not |
|---|---|---|
| 70–84 | 112 | Exceed 84% estimated requirements × 108% basic price |
| 84–92 | 108 | Exceed 92% estimated requirements × 104% basic price |
| 92–100 | 104 | Exceed estimated requirements × basic price |
| 100–110 | 94 | Be less than estimated requirements × basic price |
| 110–120 | 93 | Be less than 110% estimated requirements × 94% basic price |
| 120–130 | 92 | Be less than 120% estimated requirements × 93% basic price |

The pertinent parts of the "Changes" clause provide:

"The Contracting Officer may at any time * * * make changes in or additions to drawings and specifications, issue additional instructions, require modified or additional work or services within the general scope of the contract, change the place of delivery or shipment, or the amount of Government-furnished property. If any such change causes an increase or decrease in the cost of, or in the time required for, performance of this contract, an equitable adjustment shall be made in the contract price, or time of performance, or both, and the contract shall be modified in writing accordingly. Any claim by the Contractor for adjustment under this clause must be asserted within sixty (60) days from the date of receipt by the Contractor of the notification of change: PROVIDED, however, That the Contracting Officer, if he decides that the facts justify such action, may receive and act upon any such claim asserted at any time prior to final payment under this contract. Failure to agree to any adjustment shall be a dispute concerning a question of fact within the meaning of the clause of the contract entitled 'Disputes.' However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed."

The pertinent parts of the "Disputes" clause provide:

"(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer. * * * The decision of the Contracting Officer shall be final and conclusive unless, within 30 days * * *, the Contractor * * * furnishes to the Contracting Officer a written appeal addressed to the Secretary. The decision of the Secretary * * * for the determination of such appeals shall be final and conclusive unless determined by a Court of competent jurisdiction to have been fraudulent, or capricious, or abritrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. * * *

"(b) This 'Disputes' clause does not preclude consideration of law questions in connection with decisions provided for in paragraph (a) above: Provided, That nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law."

During July, 1960, the number of meals served by appellee was 69.4% of the estimate for that month. Appellee therefore sought an "equitable adjustment," as provided in paragraph 1(c) of the contract, and claimed the amount of $10,-575.79 ($9,833.73 expenses plus $742.06 profit), on the ground that it was entitled to its total expenses plus reasonable profit. The contracting officer awarded appellee $9,172.98, which was the total amount appellee would have been paid had it served 70% of the estimated requirements. The contracting officer decided that to be equitable, an adjustment did not require recoupment of costs plus profit, and, since the contract schedule provided a lesser compensation for a lesser number of meals served, down to the lower limit of 70%, the contracting officer stated:

"Therefore, an equitable adjustment for the serving of any number of meals less than such 70%, in order to be equitable to both parties under the contract, may not exceed the amount payable had 70% of estimated requirements been served."

The Armed Services Board of Contract Appeals, while stating that the contracting officer's theory "has some appeal," affirmed his decision on the ground that appellee had failed to show any increase in unit cost as a result of the variance from 70% of estimated requirements. The Board pointed to that portion of the "Changes" clause which provides, "if any such change causes an increase * * * in the cost of * * * performance of

this contract, an equitable adjustment shall be made in the contract price * *." This language, according to the Board, required a showing by appellee that the variance from 70% of estimated requirements resulted in an increase in unit costs.

Appellee, by a supplemental complaint in the district court, sought judicial review of the Board's decision as to July, 1960, and also alleged that the same basic controversy existed for seven more months of the contract period, and asked damages for all eight months, in the amount of $9,633.49. The district court ruled that the Board had failed to employ the proper legal standards in interpreting the contract, and held that appellee was entitled to reasonable compensation for his services, "which in this case we feel best can be reached by determining what the cost would have been for any prudent contractor similarly situated, plus a reasonable profit." Accordingly, the court remanded the case to the Board for a determination of the equitable adjustment consistent with the court's opinion. This appeal followed. We affirm.

The Government's initial contention is that the administrative determination of the equitable adjustment in this case constituted a finding of fact which is binding upon the courts under the Wunderlich Act [2] and the "Disputes" clause of the contract in question. In support of this contention, the Government relies on United States v. Callahan Walker Const. Co., 1942, 317 U.S. 56, 63 S.Ct. 113, 87 L.Ed. 49, for the proposition that the determination of an equitable adjustment

is a question of fact. This proposition was recognized by the district court, but was rejected as inapplicable on the basis of this Court's language in Ferran v. Flemming, 5th Cir. 1961, 293 F.2d 568, 571:

"* * * when the fact-finder has failed to employ the proper legal standard in making its determination the finding may not stand. Mitchell v. Mitchell Truck Lines, 5 Cir., 1961, 286 F.2d 721; Henderson and Poole v. Flemming, 5 Cir., 1960, 283 F.2d 882; United States v. Williamson, 5 Cir., 1958, 255 F.2d 512; Mitchell v. Raines, 5 Cir., 1956, 238 F.2d 186. The facts must be evaluated by the administrator in the light of correct legal standards to entitle the administrative findings to the insulation of the substantial evidence test."

This principle is clearly applicable in this case. In deciding that an equitable adjustment for the serving of any number of meals less than 70% of estimated requirements could not exceed the amount payable had 70% of estimated requirements been served, the contracting officer was actually interpreting the language and specifications of the contract. It is settled that such an interpretation involves a question of law and is therefore subject to independent resolution by the courts. Hol-Gar Manufacturing Corp. v. United States, Ct.Cl. 1965, 351 F.2d 972, 974; Merritt-Chapman & Scott Corp. v. United States, Ct.Cl. 1966, 355 F.2d 622, 624.

The next question, of course, is whether the contracting officer did in fact employ an improper legal standard in

2. The Wunderlich Act, 41 U.S.C. §§ 321, 322, provides as follows:

"No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his representative or

board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." 41 U.S.C. § 321.

"No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board." 41 U.S.C. § 322.

making his determination. The theory of the contracting officer was that, since the fixed-price portion of the contract always provided for a lesser compensation for a lesser number of meals served (down to the lower limit of 70% of estimated requirements), an equitable adjustment for the serving of any number of meals less than such 70% could not exceed the amount payable had 70% of estimated requirements been served. In other words, the contracting officer felt that appellee should not receive more money for serving 69.4% of estimated requirements than he would have received for serving 70%.

■ This theory is faulty in several respects. First, it ignores the fact that appellee was undoubtedly influenced to bid on the contract on the basis of the full 100% Government estimate, and not on the basis of 70% of that estimate. Yet for eight out of the twelve months in question, the Government did not come within 30% of its estimated requirements. Second, the theory ignores the plain language of the contract. By the terms of the agreement the contractor obligated himself to serve 70% of estimated requirements for a fixed price regardless of whether the price resulted in a profit or loss. In the same contract, however, the parties stopped the scale at 70% and expressly agreed that for any lesser percentage of service, the fixed-price formula would not apply and the price would be subject to an "equitable adjustment." See paragraph 1(c) of the contract, *supra*. Finally, it is undisputed that in prior similar contracts with appellee and with other parties, the Government had paid an amount in excess of the lowest total due under the fixed-price portion of the contract, when under the terms of the contract the fixed price was no longer applicable and the equitable adjustment clause applied. These factors convince us that the legal standard employed by the contracting officer was improper since it was patently inequitable.

The Government urges, however, that we should adopt the theory of the Armed Services Board of Contract Appeals as a basis for denying appellee recovery. As stated earlier, the Board affirmed the contracting officer on the theory that appellee had failed to show that the variance from 70% of estimated requirements had resulted in an increase in unit costs. The basis of the Board's decision may be summarized as follows: Paragraph 1(c) of the contract provided that if there was a variance from estimated requirements by more than 30%, the parties were to negotiate an equitable adjustment in the contract price "for that month in the manner provided in the 'Changes' clause of this contract." The "Changes" clause provided: "If any such change causes an increase * * * in the cost of * * * performance of this contract, an equitable adjustment shall be made in the contract price. * * *" Therefore, the Board reasoned that under the "Changes" clause appellee was required to show that the variance from 70% of estimated requirements resulted in an increase in unit costs.

■ A reading of the "Changes" clause shows that it is made up of two distinct parts. The first part provides that the contracting officer may make changes in the contract specifications and then, in the language quoted above, provided that if any change causes an increase in cost, an equitable adjustment shall be made. The second part of the "Changes" clause deals with the procedure to be followed by a contractor in claiming an adjustment. The district court felt that the reference to the "Changes" clause in paragraph 1(c) of the contract should be read in the context of this case as a reference to only the second, procedural part of the "Changes" clause. We agree. As pointed out by the district court, the deviation from 70% of estimate in the instant case was not really a change in the contract at all, since it was expressly provided for in the contract. The Government drafted the contract in question, and it is established that any doubts and ambiguities in a contract prepared by representatives of the Government must be construed against the Government. Guy-

ler v. United States, 1963, 161 Ct.Cl. 159, 314 F.2d 506, 509.

Actually, the Government's argument that appellee should not be allowed to recover unless it can show an increase in unit costs as a result of the deviation from *70%* of estimate is entirely misconceived. Appellee clearly showed an increase in unit cost as a result of the deviation from the *100%* estimate.[3] The sliding scale provision of the contract down to the lower limit of 70% precluded appellee from asking for an equitable adjustment, even though its costs increased, so long as the deviation from estimate did not go below 70%. Such is not the case here, and we see no reason why appellee should be required to show an increase in cost based on 70% of estimated requirements, when that percentage is no longer applicable.

One other point should be mentioned. The Government contends that the district court erred in attempting to provide a precise formula for the determination of an equitable adjustment. We disagree. The court merely held:

"The contractor is entitled to reasonable compensation for his services, which *in this case* we feel best can be reached by determining what the cost would have been for any prudent contractor similarly situated, plus a reasonable profit." (Emphasis ours.)

We do not pass on the question of how an equitable adjustment can best be determined in other cases. We do hold, however, that the test espoused by the district court is a reasonable and workable one under the circumstances of this case.

The judgment of the district court is affirmed.

[3] The following data were derived from appellee's pleadings by the district court:

| Month | Estimated No. of Meals at 100% of Requirements | Unit Cost | Actual Number of Meals Served | Unit Cost |
|---|---|---|---|---|
| July, 1960 | 57,071 | .1846 | 39,592 | .2661 |
| Sept., 1960 | 55,230 | .1773 | 37,373 | .2369 |
| Oct., 1960 | 57,071 | .1862 | 38,907 | .2534 |
| Nov., 1960 | 55,230 | .1878 | 37,451 | .2519 |
| Dec., 1960 | 57,071 | .1879 | 36,233 | .2692 |
| Jan., 1961 | 57,071 | .1933 | 38,491 | .2548 |
| April, 1961 | 55,230 | .1933 | 38,119 | .2554 |
| May, 1961 | 57,071 | .1974 | 39,222 | .2626 |