PeR Curiam::
This case was referred to Trial Commissioner Bichard Arens with directions to submit recommendation for conclusions of law on defendant’s motion for summary judgment. The commissioner has done so in a report and opinion filed on February 16, 1967. The case has been submitted to the court on defendant’s request for review of the commissioner’s opinion, plaintiff’s response, oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner’s opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Defendant’s motion for summary judgment is, therefore, denied and the case is returned to the trial commissioner for further appropriate proceedings.
OPINION OF COMMISSIONER*
Arens, Commissioner;
Plaintiff appealed under the standard disputes clause, to the Armed Services Board of Contract Appeals rulings of the contracting officer, arising under a contract for the rebuilding of an operational apron at the Portland (Oregon) International Airport. The parties stipulated at the Board hearing that the Board would decide questions of entitlement only, “leaving for remand to the contracting officer and negotiation the question of an equitable adjustment, if any.” Defendant moves for summary judgment on the ground that plaintiff has failed to exhaust its administrative remedy in that, following the Board decision on the several issues presented, plaintiff refused to meet with the contracting officer, but instead filed suit in *1287 this court alleging that the decision of the Board is arbitrary and capricious regarding certain factual issues and erroneous in certain legal interpretations.[1]
Plaintiff contended before the Board that the contract specifications regarding compaction were practically and legally impossible of performance because plaintiff expended far more time and effort in compacting than it and, assert-edly, defendant expected would be necessary. The Board decided that plaintiff had not made out a case of legal impossibility of performance.
Plaintiff next asserted that, because of certain test procedures employed by defendant, it was required to do more work or work to a higher standard than called for by the contract specifications. The Board stated that it could not find that defendant’s architect-engineer’s testing procedures were improper, and that although the enforcement of the specifications was strict, it was not so excessive as to constitute a change or extra work.
It was indicated in the contract and the parties contemplated that when the base and subbase material from the old apron was removed, it would be stored, that about half of it would be reused in the building of the new apron, and that the other half would be imported by plaintiff from outside sources. When the base and subbase material from the old apron was removed, however, it proved to be unsuitable for reuse, and therefore plaintiff was required to haul all of it away and to import approximately twice the amount originally contemplated. The parties agreed that plaintiff was entitled to an equitable adjustment because of this “overrun” but disagreed as to the interpretation of the contract specifications regarding the formula for payment. The specifications provided that if the actual quantity of any item actually exceeded 110%, then an equitable adjustment would be granted. Defendant contended that the equitable adjustment was to be limited to the quantity of overrun which exceeded 110% of the original estimate, but plaintiff contended that the equitable adjustment should be for the entire increase in quantity. The Board agreed with defendant’s position, and then pointed out certain elements, *1288 including plaintiff’s alleged costs of performance, for the consideration of the contracting officer in making an equitable adjustment.
Plaintiff claimed that the contracting officer’s order to augment the work force and increase the days of work was an acceleration of the work and a change entitling plaintiff to an equitable adjustment, and that plaintiff was entitled to about a month and a half extension in its performance time because of various factors, including the weather, delays caused by defendant, and the importation of the extra base and subbase material. The Board ruled that the contracting officer’s order was proper and therefore denied the claim for a equitable adjustment. Since defendant conceded that the weather entitled plaintiff to a 5 day time extension, the Board stated that it assumed that the contracting officer “will or has granted such extension.” The Board further found that plaintiff was entitled to a 1 day time extension for delay caused by defendant, but that extensions previously granted by the contracting officer embraced an adequate allowance for the importation of the extra base and subbase material.
The parties disagreed on the calculation of the distance and the price for hauling away the base and subbase material which they originally contemplated would be reused. Plaintiff contended that it was entitled to 160 per yard mile, plus overhead, profit and bond expense, and that certain distances in excess of a mile should be “rounded off” to one-half mile. The Board ruled, however, that actual distances should be employed. The Board further stated, “By the same token, a fair price per mile per ton or cubic yard should be just that, and a price quoted or agreed to on the assumption of a higher arbitrary rounded distance figure would not necessarily be fair for a lower actual distance figure.”
The contracting officer had found that although the contract completion date, as modified, was December 28, 1963, plaintiff did not substantially complete performance until March 30,1964, and that as a result defendant suffered damages in the amount of $11,707.18, which amount he assessed against plaintiff. The Board stated that the assessment of actual damages was dependent upon the time of completion *1289 of the contract work in relation to the properly extended contract completion date which the Board had determined. The Board then recommended that the contracting officer give careful consideration to plaintiff’s contentions regarding substantial completion and Air Force, use of the apron before certain of the sealing work had been finished.
It is clear that with the exception of the allowance by the Board of a 1 day time extension for delay caused by defendant, and the Board’s recommendation that the contracting officer give careful consideration to plaintiff’s contentions regarding substantial completion, the issues before the Board were decided adverse to plaintiff. In other words, for all practical purposes, plaintiff lost before the Board. In its petition plaintiff claims $85,012.95 and in addition seeks relief from the $11,707.18 damages which the contracting officer assessed against it. It is obvious that plaintiff not only challenges the validity of the Board opinion in all significant particulars, but would be dissatisfied with any decision which the contracting officer might make on quantum in accordance with the guidelines of the opinion. Is plaintiff, under these circumstances, obliged to forego suit in this court until after the contracting officer shall have rendered his decision on quantum, either pursuant to negotiations or otherwise? [2]
The decided cases prescribe the general rule that a contractor seeking an equitable adjustment under the standard changes and disputes clauses of a Government contract is not entitled to bring an action thereon in this court without exhausting the. administrative remedies provided in the contract.[3] This court has recently ruled, however, in United States Steel Corp. v. United States, 177 Ct. Cl. 26, 367 F. 2d 399 (1966), on facts similar to those in the instant case, that a contractor had sufficiently pursued its administrative remedy in obtaining a Board determination adverse to it on the main aspects of its case, without the necessity of first *1290 proceeding with a remand, ordered by the Board, to determine certain charges which were of a minor nature. The court stated:
As for the alternative defense that the suit is premature for failure to exhaust contract remedies, we hold that the plaintiff (1) sufficiently pursued its administrative remedy in obtaining the final Board determination that “past service” charges could not be reimbursed, but (2) cannot bring a new suit to review any administrative determination hereafter made on the “current service” question remanded by the Board (if plaintiff should choose to pursue that basis for relief). Once the ASBCA had rejected the demand for all “past service” pension costs — leaving only the minor amount available for “current service” charges to be computed — American Bridge could elect, as it did, to test its major claim in this court. The considerable difficulties of isolating and calculating the “current service” factor, on remand from the Board, would be obviated or lessened if the court were to hold “past service” charges reimbursable in whole or in part. We see no reason why plaintiff should be forced, before coming here on the mam aspect of the case which has finally been decided adversely to it, to go through the apparently arduous process of proving its entitlement to the minor recovery coming to it under the theory of the Board’s decision which plaintiff rejects as wholly inadequate. The primary reasons for exhaustion are inapplicable to this situation; any possible administrative relief under the remand will obviously be unsatisfactory and there will be no facts found which bear on the issues before us. At the same time plaintiff cannot split its indivisible claim under the Navy contracts. See Nager Elec. Co. v. United States, decided today, [177 Ct. Cl. 234, 244-249, 368 F. 2d 847, 854-57]. This suit having been brought, no subsequent suit on the same contract would normally be allowable. Plaintiff bears that risk.
Defendant asserts that under the decision of the Board in the instant case there remain a number of factual matters yet to be resolved by the contracting officer, and that the instant case is therefore distinguishable from United States Steel Corp., supra, which defendant contends is therefore inapposite. Although there are a number of factual matters yet to be resolved by the contracting officer, these are all within guidelines set forth in the Board opinion which plain *1291 tiff challenges. In other words, plaintiff is now seeking to overturn in this court the basic principles upon which the contracting officer would proceed with his task on the question of quantum. Moreover, regarding the bulk of plaintiff’s claims, the contracting officer would make no determination on quantum because he would be precluded from doing so by the Board opinion. It appears, therefore, that the “main aspect” of plaintiff’s case has been decided adversely to it, and that what remains is only an incident thereto.
It is concluded that the disposition of the pending motion should be on the basis of the foregoing pronouncement in United States Steel Corp., supra, and accordingly it is recommended that defendant’s motion for summary judgment be denied.

The opinion and recommended conclusion of law are submitted pursuant to order of the court under Rule 54(b). The necessary facts are stated in the opinion.

ASBCA Nos. 10037 and 10041 dated February 17, 1966.

 Defendant does not contend that plaintiff’s petition should he dismissed with prejudice, but only that it be dismissed without prejudice on the part of plaintiff to file its petition again after the administrative remedies have been exhausted.

 United States v. Callahan Walker Constr. Co., 317 U.S. 56 (1942); United States v. Blair, 321 U.S. 730 (1944); United States v. Joseph A. Holpuch Co., 328 U.S. 234 (1946); P.L.S. Coat & Suit Corp. v. United States, 148 Ct. Cl. 296, 180 F. Supp. 400 (1960).