Whauex, Judge,
delivered the opinion of the court:
This case arises on contracts entered into with the Government which have been fully performed and the work accepted. The defendant has demurred to the allegations in the petition on the ground that on the face of the petition it shows that the suit has been brought more than six years after the cause of action accrued.
■ On March 22, 1933, the Supreme Court of the State of New York directed the Superintendent of Insurance to take *122 possession of the property, and liquidate the affairs of the Southern Surety Company and on May 10, 1935, Louis H. Pink was appointed to succeed George S. Van Schaick, as Superintendent of Insurance, and became the liquidator of the said Southern Surety Company and he brings this suit in that capacity.
The Waldeck Deal Dredging Company on April 5, 1929, entered into a contract with the defendant, acting through the Engineering Department, to dredge approximately 1,689,375 cubic yards of material from Section V, of the Intracoastal Waterway from Beaufort to the Cape Fear River in the State of North Carolina. The Southern Surety Company executed a bond for the faithful performance of the contract. The contractor entered upon the work and, after having dredged a certain portion, encountered a submerged forest of cypress trees which delayed the operations and occasioned extra expenses, under the terms of the contract, to the amount of $6,287.71. This amount is not disputed by the Government. During the operations of the contractor, certain progress payments were made from time to time and from these payments certain percentages were withheld by the Government in the amount of $6,637.97.
On October 22, 1929, a receiver was appointed for the contractor, which was then an adjudged bankrupt.
On December 16, 1929, the contractor having failed to continue its operations, the defendant under the terms of the contract terminated its right to proceed and the surety, the Southern Surety Company of New York, was duly notified.
The petition shows that after the termination of the contract with the Waldeck Deal Dredging Company, the defendant entered into a second contract with the Southern Surety Company on the sixteenth day of January, 1930. Article 1 of this contract provides as follows:
Article 1. /Statement of work. — The contractor shall furnish all labor and materials, and perform all work required for dredging approximately 700,000 cubic yards of material from that part of Section V, Intra-coastal Waterway, Beaufort to the Cape Fear River, *123 N. C., between Station 159+15 and the mean low-water mark in Myrtle Sound, just below Sea Breeze, the same being the uncompleted portion of the work required to be done under the contract entered into between the United States of America and the Waldeck-Deal Dredging- Company, of Miami, Florida, on the 5th day of April 1929, for the consideration of Eleven and seventy-three hundredths cents ($0.1173) per cubic yard, place measurement, in strict accordance with the specifications, schedules, and drawings, in so far as they apply to that part of the work between Station 159 +15 and the mean low-water mark in Myrtle Sound, just below Sea Breeze, and all of which are made a part hereof, and attached hereto, and designated as follows: Specifications for dredging Intracoastal Waterway from Beaufort, N. C., to Cape Fear Biver, N. C., Section Y (Myrtle Sound, Cape Fear Biver) dated Feb. 7, 1929 and maps marked “Intracoastal Waterway From Beaufort, N. C. to the Cape Fear Biver,” in two sheets, Sheet No. 16 and No. 17 (revised sheet).
The work shall be commenced immediately and shall be completed in accordance with paragraph 3 of specifications subject to such modifications thereof as have been or may be approved by the Government; it being understood that for the purpose of this contract the limiting date fixed for commencement of work by the Waldeck-Deal Dredging Company, of Miami, Fla., and referred to in paragraph 3 of specifications is June 12, 1929.
The amount to be paid per cubic yard in this contract was the same as that in the contract with the original contractor. However, the Southern Surety Company entered into a contract with the Atlantic, Gulf & Pacific Company, as subcontractor, to perform the contract which it had entered into with the Government at a much higher rate per cubic yard for the material to be removed with the result that the Southern Surety Company paid to its subcontractor the sum of $14,470.94 more than it received from the Government. The first contractor had removed approximately 565,879 cubic yards and the Government deleted from the contract that part of it which entailed the removal of the cypress trees and roots which had been encountered by the first contractor as unforeseen submerged obstacles and, after this work had been performed by the Government, the contract *124 was given for the balance of the work remaining to be performed to the Southern Surety Company.
The work was completed by the Southern Surety Company and accepted on April 5, 1930, and on May 13, 1930, the plaintiff demanded of the defendant the amount of the retained percentage and the amount claimed by the first contractor and admitted by the defendant as the extra expense occasioned by the unforeseen submerged obstacles during its operations. On May 29, 1930, a voucher was prepared for the amount of the retained percentage in the amount of $6,637.97, and on June 10, 1931, the Comptroller General directed a warrant for this amount to issue to the Treasurer of the United States to be deposited as an Internal Revenue Collection as an additional offset to the indebtedness of the Waldeck Deal Dredging Company for income taxes for the years 1924,1925, and 1926. On June 10, 1931, the Comptroller General declined the claim for $6,287.71 claimed by the first contractor as extra cost occasioned by the submerged obstacles above referred to.
The petition shows that the last payment made to the contractor was on April 25, 1930.
The petition was filed in this court on June 16, 1936.
It is apparent from the face of the petition that the work under these contracts was completed and accepted on April 5, 1930. Under Section 156 of the Judicial Code, Title 28, Section 262, U. S. C. A., the plaintiff had six years from the date of the accrual of its cause of action in which to sue. The time is not suspended during the period his claims for reimbursement under the terms of the contract are being considered and passed upon by the Government officials. It has been repeatedly held by this court that, under a contract to perform work, the completion and acceptance date starts the statute to run. It is the completion of the service called for under the contract, and not the date of any payment subsequently made. See Curtis, Executrix, v. United States, 34 C. Cls. 1; Withers v. United States, 69 C. Cls. 584, 587; and Maguire Petroleum Co. v. United States, 68 C. Cls. 198, 200.
The plaintiff contends that the amount of the retained percentage and the amount of the cost of the extra work *125 performed by tlie first contractor in removing the portion of submerged forest is equivalent to a trust fund held by the Government for the protection of the Surety Company and, therefore, the statute of limitations did not commence to run until after the refusal of payment had been made, which the plaintiff claims was not until May 27, 1931. We do not feel it necessary to go into an extended discussion to show that this is not a trust fund and that the cases cited by the plaintiff are not applicable. Suffice it to say that the parties had entered into contracts with the Government for the performance of work and the furnishing of labor and that all payments had to be made under the terms of the contract and all claims arise from the contractual relations. The failure of the Government to comply with the terms of the contract and to make payments as called for by its terms entitled plaintiff to bring suit on the contract immediately upon completion and acceptance of the work.
The demurrer is sustained, and the petition is dismissed.
Williams, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.