**NAGER ELECTRIC COMPANY, INC.
and Keystone Engineering
Corporation**

v.

**The UNITED STATES.**

No. 348–64.

United States Court of Claims.

Oct. 14, 1966.

Edwin Efros, New York City, for plaintiff; Albert Foreman, New York City, attorney of record; M. Carl Levine, Morgulas & Foreman, New York City, of counsel.

Ray Goddard, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DAVIS, Judge.

Plaintiffs had a contract, as joint venturers, with the Atomic Energy Commission to construct a certain facility at the Knolls Atomic Power Laboratory near West Milton, New York. In July 1958, after some preliminary warning, the Commission's representative, acting under the Termination-for-Default Article, terminated some sixteen items of the work. In August 1958, nine more items were similarly ended. In each instance the plaintiffs were informed that they would be held liable to the Government for the cost of accomplishing the terminated work. Defendant asserts that the entire contract was completed and accepted on October 6, 1958.

Under the Disputes clause, the contractors appealed various controversies to the Commission, including the claim that these partial terminations-for-default had been improper. In September 1963, the Commission's hearing examiner decided certain of the disputes but did not pass upon the termination claim because this "claim was recognized by Nager to constitute a claim for breach of contract, and thus to be beyond the jurisdiction of this forum; therefore, it is not considered herein." Both the contracting officer and the contractors sought review by the Commission of the hearing examiner's determinations on the merits. (No appeal was taken from the refusal to decide the termination claims.) The Commission denied the companies' petition but granted (in part) that of the contracting officer, and subsequently upheld his position. This decision was rendered on April 23, 1964.

Suit was instituted in this court on October 16, 1964, by a petition alleging three causes of action. The first relates to the claim for improper default terminations. The other two causes of action involve demands for equitable adjustment for changes which were denied by the Commission on review of the hearing examiner.

The defendant now moves for summary judgment on the first claim as barred by limitations under 28 U.S.C. § 2501.[1] As it was originally presented to us on brief and orally, the argument was that the plaintiffs did not treat this claim, in contrast to the other two, as within the purview of the administrative appellate system, and therefore that this particular claim accrued when the termination orders issued (in July and August 1958), and in any event no later than the completion of the contract (said to have been on October 6, 1958)—all of these dates being more than six years prior to the filing of the petition. At that stage the defendant seemed to acknowledge that the statute would not begin to run on claims subject to administrative appellate

---

1. The other two causes of action are technically not before us at this time.

determination until the completion of the administrative process, but maintained that the contractor, having chosen to consider these termination claims as beyond the Commission's "disputes" jurisdiction, should be held to that election.

To this initial contention plaintiffs gave three main responses. One was that the Commission's hearing examiner ruled, with the acquiescence of both sides, that this claim was a "breach" claim outside his jurisdiction, and that it was contemplated by all that this termination matter would be brought to this court together with the other claims which were clearly within conventional administrative jurisdiction; that ruling and understanding (in October 1959) was enough, it is argued, to permit plaintiffs to sue here in October 1964. The second reply to the defense of limitations was that, in any case, limitations did not commence until final payment in August 1959 and February 1960. The third, closely related to the second, was that acceptance and completion occurred, not on October 6, 1958, but some month-and-a-half later.

After the oral argument, defendant modified its stand to contend that in Government contract cases the claim arises, and the limitations period starts, no later than the completion of the work.[2] This is said to be so regardless of the pendency of administrative proceedings under the Disputes clause and regardless of whether the claim in suit is for a "breach" or arises "under" the contract within the coverage of the Disputes

clause (see United States v. Utah Constr. & Mining Co., 384 U.S. 394, 404–405, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)). This general approach to limitations has since been taken by the defendant in a number of pending contract cases which we also pass upon today.[3]

Because of the Government's insistence on its new position and in the light of recent decisions by other courts (States Marine Corp. v. United States, 283 F.2d 776 (C.A.2, 1960); Northern Metal Co. v. United States, 350 F.2d 833 (C.A.3, 1965); Crown Coat Front Co. v. United States, 363 F.2d 407 (C.A.2, decided June 22, 1966), pet. for a writ of cert. filed, 87 S.Ct. 87, Oct. Term 1966, No. 371), we have reexamined the long chain of our limitations rulings in the contract field to determine the standards to be applied in this and the companion cases.

I

1. Section 2501 of Title 28 of the United States Code bars claims in this court "unless the petition thereon is filed within six years after such claim first accrues." "First accrual" has usually been put, in broad formulation, as the time when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.[4] The prerequisite that the plaintiff must be able lawfully to demand payment goes back to the early days of this court.[5] For contract cases, in the era before use of "disputes" clauses (or like devices for

---

2. In some parts of its post-argument brief, the defendant still seems to assert, perhaps alternatively, that the claim accrued in July and August 1958 when the termination notices were issued.

3. United Contractors v. United States, Ct. Cl., —— F.2d ——; United States Steel Corp. v. United States, Ct.Cl., 367 F.2d 399; Conn v. United States, Ct.Cl., 366 F.2d 1019.

4. See, e.g., Sauer v. United States, 354 F. 2d 302, 304, 173 Ct.Cl. ——, —— (1965); Oceanic S.S. Co. v. United States, 165 Ct. Cl. 217, 218, 225 (1964); Cosmopolitan Mfg. Co. v. United States, 297 F.2d 546, 547, 156 Ct.Cl. 142, 144 (1962); Fattore v. United States, 312 F.2d 797, 800, 160

Ct.Cl. 666, 670 (1963); Empire Inst. of Tailoring v. United States, 161 F.Supp. 409, 410, 142 Ct.Cl. 165, 167 (1958); Ball v. United States, 137 F.Supp. 740, 742, 133 Ct.Cl. 841, 843 (1956), cert. denied, 352 U.S. 827, 77 S.Ct. 41, 1 L.Ed. 2d 50; Group v. United States, 125 Ct. Cl. 135, 137 (1953); Reliance Motors Inc. v. United States, 81 F.Supp. 228, 230, 112 Ct.Cl. 324, 328 (1948); Withers v. United States, 69 Ct.Cl. 584, 587 (1930).

5. See Battelle v. United States, 7 Ct.Cl. 297, 300 (1871); Bulkley for Use of Wright v. United States, 8 Ct.Cl. 517, 519 (1872); Harrison v. United States, 20 Ct.Cl. 175, 179–180 (1885); Ravesies

administrative determination), the general principle was refined to the more specific rule that normally the cause of action first accrues, and the statute begins to run, when the work is completed or the items delivered (and accepted), or the services rendered, or (if the contract was never completed) when the breach became total.[6] That was considered to be the time when the contractor could ordinarily demand his money and bring his suit if payment was not made.[7] Voluntary efforts thereafter to obtain compensation through executive channels or by negotiation would not defer or toll limitations.[8]

■ But we have always recognized that this is not a rigid rule—that, in the contract field as in others, a particular agreement, or a special statute, can establish some other pre-condition for liability or an unusual time for demanding payment. See Friedman v. United States, 310 F.2d 381, 385–388, 159 Ct.Cl. 1, 8–13 (1962), cert. denied, Lipp v. United States, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). For instance, where the contract provided that payment would not be made until "within

10 days after the warrant shall have been passed by the Secretary of the Treasury", it was held that the limitations period did not start until after the lapse of that ten-day period plus a further reasonable span for the government officials to act upon the claimant's account. Smith Courtney Co. v. United States, 46 Ct.Cl. 262, 266–267 (1911). Similarly where the contract declared that an item was not payable until a determination by a designated agency. Penn Bridge Co. v. United States, 71 Ct.Cl. 273, 275–276, 278–279 (1930); Hugger v. United States, 66 Ct.Cl. 97, 104 (1928). See, also, to comparable effect, Maginnis v. United States, 52 Ct.Cl. 271, 276–277 (1917) (special statute); Utah Power & Light Co. v. United States, 67 Ct.Cl. 602, 606–607 (1929) (same). The co-existence of this class of cases (in which the agreement shows that the claim accrues not at, but after, completion of the work), together with the other group in which the cause of action does arise on completion-plus-acceptance, has led the court to note, from time to time, that there is no single inexorable principle of limitations for contract litigation but that the in-

v. United States, 21 Ct.Cl. 243, 247–248 (1886); Patterson v. United States, 21 Ct.Cl. 322, 323 (1886); Carlisle v. United States, 29 Ct.Cl. 414, 415 (1894); Curtis v. United States, 34 Ct.Cl. 1, 4 (1898).

6. Battelle v. United States, 7 Ct.Cl. 297, 300 (1871); Patterson v. United States, 21 Ct.Cl. 322, 323 (1886); Carlisle v. United States, 29 Ct.Cl. 414, 415 (1894); Myerle v. United States, 33 Ct.Cl. 1, 22 (1897); Curtis v. United States, 34 Ct. Cl. 1, 4 (1898). St. Louis, Brownsville & Mexico Ry. v. United States, 63 Ct.Cl. 103, 105 (1927); Atlantic Coast Line R.R. Co. v. United States, 66 Ct.Cl. 576, 580–581 (1929); Mazer Acoustile Co. v. United States, 66 Ct.Cl. 31, 37–38 (1928); Southern Pacific Co. v. United States, 67 Ct.Cl. 414, 420–422 (1929), cert. denied, 280 U.S. 567, 50 S.Ct. 26, 74 L.Ed. 620; Pink, Superintendent of Ins. v. United States, 85 Ct.Cl. 121, 124 (1937), cert. denied, 303 U.S. 642, 58 S.Ct. 641, 82 L. Ed. 1102; Joplin v. United States, 89 Ct. Cl. 345, 356, 362–363 (1939).

7. Conversely, the court has made it clear that suit does not have to be brought on each individual item as it occurs prior to final completion-and-acceptance. Myerle v. United States, 31 Ct.Cl. 105, 132–134 (1896); Joplin v. United States, 89 Ct. Cl. 345, 355–356, 363 (1939); Holton, Seelye & Co. v. United States, 65 F.Supp. 903, 906–907, 106 Ct.Cl. 477, 499–500 (1946).

8. See several of the opinions cited in footnote 6, supra, plus Shimmins v. United States, 10 Ct.Cl. 465, 466 (1874); Withers v. United States, 69 Ct.Cl. 584, 587; C. L. Maguire Petroleum Co. v. United States, 68 Ct.Cl. 198 (1929) (right to petition the Secretary, or his representatives, optional with contractor); John P. Moriarty, Inc. v. United States, 97 Ct. Cl. 338, 339 (1942); and Friedman v. United States, 310 F.2d 381, 388, 159 Ct. Cl. 1, 11–12 (1962), cert. denied, Lipp v. United States, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963) (and cases cited).

dividual terms, conditions, and practices must always be studied.[9]

■■■ 2. With the coming into vogue of mandatory "disputes" clauses —increasingly in the years since the late 1930's—this court has continued to apply this same set of rules. Where the contract has included no relevant "disputes" provision, or where that procedure was not duly invoked, or where the administrative proceedings have not extended beyond the date of completion-and-acceptance, the declarations have been that under the conventional contract the claim accrues, and the statutory period commences, at the time of completion or acceptance (if the latter is contemplated).[10] But with respect to matters properly pursued through a "disputes" proceeding (which has lasted beyond completion) the court has said, again and again, that the cause of action does not arise and limitations does not run until the mandatory administrative determination.[11] For example, in Cosmopolitan Mfg. Co. v. United States, 297 F.2d 546, 547, 156 Ct.Cl. 142, 144 (1962), cert. denied, Arlene Coats v. United States, 371 U.S. 818, 83

9. See, Oceanic S.S. Co. v. United States, 165 Ct.Cl. 217, 225 (1964); Kraemer Mills, Inc. v. United States, 319 F.2d 535, 538, 162 Ct.Cl. 367, 372 (1963); Steel Improvement & Forge Co. v. United States, 355 F.2d 627, 631, 174 Ct.Cl. ——, —— (1966); L. Balkin Builder, Inc. v. United States, 142 F.Supp. 597, 599, 136 Ct.Cl. 155, 158 (1956); Pennsylvania Coal & Coke Corp. v. United States, 70 F.Supp. 136, 140, 108 Ct.Cl. 236, 247–248 (1947); Holton, Seelye & Co. v. United States, 65 F.Supp. 903, 906, 106 Ct.Cl. 477, 499 (1946); Austin Eng'r Co. v. United States, 88 Ct.Cl. 559, 562 (1939); Manufacturers Aircraft Ass'n v. United States, 77 Ct.Cl. 481, 522 (1933), cert. denied, 291 U.S. 667, 54 S.Ct. 442, 78 L.Ed. 1057.

10. Pink, Superintendent of Ins. v. United States, 85 Ct.Cl. 121, 124 (1937), cert. denied, 303 U.S. 642, 58 S.Ct. 641, 82 L.Ed. 1102; Joplin v. United States, 89 Ct.Cl. 345, 356, 362–363 (1939). B–W Constr. Co. v. United States, 100 Ct.Cl. 227, 235 (1943); John P. Moriarty, Inc. v. United States, 97 Ct.Cl. 338, 339 (1942); L. E. Myers Co. v. United States, 64 F.Supp. 148, 149, 105 Ct.Cl. 459, 478 (1946) (a late appeal to the Secretary disregarded); Holton, Seelye & Co. v. United States, 65 F.Supp. 903, 905–907, 106 Ct.Cl. 477, 497–498, 500 (1946); State Tent & Canvas Co. v. United States, 130 F.Supp. 384, 385, 131 Ct.Cl. 215, 217–218 (1955); L. Balkin Builder, Inc. v. United States, 142 F.Supp. 597, 599, 136 Ct.Cl. 155, 158 (1956); Art Center School v. United States, 142 F.Supp. 916, 921, 136 Ct.Cl. 218, 225–226 (1956); International Potato Corp. v. United States, 161 F.Supp. 602, 604–605, 142 Ct.Cl. 604, 606–607 (1958); Empire Institute of Tailoring, Inc. v. United States, 161 F. Supp. 409, 410–411, 142 Ct.Cl. 165, 167–168 (1958); Acorn Decorating Corp. v.

United States, 174 F.Supp. 949, 951–952, 146 Ct.Cl. 394, 398 (1959); Specialty Assembling & Packing Co. v. United States, 298 F.2d 794, 796, 156 Ct.Cl. 252, 255–256 (1962); Steel Improvement & Forge Co. v. United States, 355 F.2d 627, 630, 174 Ct.Cl. ——, —— (1966); Mulholland v. United States, 361 F.2d 237, 243–244, 175 Ct.Cl. ——, —— (1966).

11. Electric Boat Co. v. United States, 81 Ct.Cl. 361, 367–368 (1935), cert. denied, 297 U.S. 710, 56 S.Ct. 573, 80 L.Ed. 997 (1936); Austin Eng'r Co. v. United States, 88 Ct.Cl. 559, 562–564 (1939); Holton, Seelye & Co. v. United States, 65 F.Supp. 903, 907, 106 Ct.Cl. 477, 501 (1946); Griffin v. United States, 77 F. Supp. 197, 206, 110 Ct.Cl. 330, 372–373 (1948), rev'd on other grounds, United States v. Jones, 336 U.S. 641, 69 S.Ct. 787, 93 L.Ed. 938 (1949); Art Center School v. United States, 142 F.Supp. 916, 921, 136 Ct.Cl. 218, 226 (1956); Empire Institute of Tailoring, Inc. v. United States, 161 F.Supp. 409, 411, 142 Ct.Cl. 165, 168 (1958); International Potato Corp. v. United States, 161 F.Supp. 602, 604–605, 142 Ct.Cl. 604, 606–607 (1958); Clifton Products, Inc. v. United States, 169 F.Supp. 511, 512–513, 144 Ct.Cl. 806, 809 (1959); Cosmopolitan Mfg. Co. v. United States, 297 F.2d 546, 547, 156 Ct.Cl. 142, 144 (1962), cert. denied, Arlene Coats v. United States, 371 U.S. 818, 83 S.Ct. 36, 9 L.Ed.2d 60 (1962); Steel Improvement & Forge Co. v. United States, 355 F.2d 627, 631, 174 Ct.Cl. ——, —— (1966).

As many of these cases show, the court has continued to hold that *permissive* administrative remedies do no defer or suspend the running of limitations. See, also, Benjamin v. United States, 348 F.2d 502, 512, 172 Ct.Cl. ——, —— (1965); Oregon Forest Fire Ass'n v. United States, 170 Ct.Cl. 308, 317–318 (1965).

S.Ct. 36, 9 L.Ed.2d 60 (1962), the court recently said: "Plaintiff grounds its claim on the alleged arbitrary and capricious action of the Army Board of Contract Appeals, and its approval by the Secretary of the Army. It follows that plaintiff's cause of action, if any, accrued at the time the appeals board acted, all events having occurred which were necessary to fix the liability of defendant and entitle plaintiffs (sic) to bring suit." In our reexamination of this court's decisions we have found neither holding nor plain dictum to the contrary, and with one possible exception [12] not even an antagonistic suggestion or intimation.[13]

■ In sum, the uniform course of this court's practice has been, ever since the issue first arose, that, for matters required to be processed under a mandatory "disputes" provision, the judicial claim does not ripen so as to trigger limitations until the duly-invoked decision of the administrative or arbitral board or tribunal (if that determination post-dates completion-and-acceptance). In such a case the claim does *not* accrue on completion or acceptance, but at the later time. This rule is, of course, in full accord with the general principle, applied by the court in other areas (especially personnel-removal and disability-retirement litigation), that normally no claim arises until exhaustion of a required administrative remedy. "That is the condition precedent to the accrual of the cause of action." Friedman v. United States, 310 F.2d 381, 385–388, 389–390, 159 Ct.Cl. 1, 8–13, 13–14 (1962), cert. denied, Lipp v. United States, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

## II

A complexity is added when an item sued upon is a "breach of contract claim" —not redressable under the contract adjustment provisions and therefore not subject to the "disputes" procedure (see United States v. Utah Constr. & Mining Co., 384 U.S. 394, 403–407 & n. 6, 86 S.Ct.

12. In Aktiebolaget Bofors v. United States, 153 F.Supp. 397, 399, 139 Ct.Cl. 642, 644, (1957), there is an unelaborated observation, in connection with an unusual arbitration provision in a supply contract, that "the arbitration agreement is a provision for extrajudicial resolution of disputes, analogous to administrative remedies which are often available. A party may be barred from suit for failure to exhaust such remedies, but normally, the statute of limitations runs while he is pursuing them." If the latter sentence were intended to refer to obligatory "dispute" procedures, it would contravene everything else the court has said on the subject.

Other cases cited by the defendant involved contracts without pertinent "disputes" provisions, or where that procedure was not mandatory or was not properly invoked or pursued, or did not extend beyond the contract's completion date. In Acorn Decorating Corp. v. United States, 174 F.Supp. 949, 146 Ct.Cl. 394 (1959), the contractor failed to appeal from the Corps of Engineers Board to the Secretary of the Army, and then argued that this failure was immaterial because the "disputes" procedure did not actually cover the claim; the court held that if the plaintiff were right in this position the claim was barred by limitations, and if it were wrong the suit was precluded for failure to exhaust the administrative remedy. In L. E. Myers Co. v. United States, 64 F.Supp. 148, 149–150, 105 Ct.Cl. 459, 478 (1946), the pursuit of the administrative remedy was far too late, and the court disregarded it. In John P. Moriarty, Inc. v. United States, 97 Ct.Cl. 338, 339 (1942), the administrative remedy was merely permissive, as it was in C. L. Maguire Petroleum Co. v. United States, 68 Ct.Cl. 198, 200 (1929).

13. Indicative of the Government's general acceptance in this court (prior to its recent re-survey of its position) of the rule that the claim does not accrue until the administrative determination are the several instances in recent years in which the Government has suggested dismissal of a petition in this court because the contractor had not yet obtained a final administrative decision on his claim. It is also significant that the Government's briefs initially filed in the four contract cases now before us, as well as in some others, assumed, implicitly or explicitly, that limitations does not run on "claims under the contract" until the administrative determination. For this court the change in the Government's view did not come until after the oral argument in the present case.

1545, 16 L.Ed.2d 642 (1966))—while other items in the litigation (and relating to the same agreement) fall "under the contract" and therefore have had to go through the administrative process. If the Board procedure has ended before completion-and-acceptance, there is no problem; limitations will commence on the latter date as to a suit pertaining to either aspect of the contract. But if the "disputes" procedure on the other items lasts beyond the completion date, the question is when does the limitations period begin for the accompanying "breach of contract claim": at completion, or when the administrative determination is made on the items "under the contract"? That inquiry implicates others: (1) Do court demands related to a single non-divisible contract constitute a single cause of action, or can each item be a separate judicial claim? (2) What is the effect on the remaining items if suit is or must be brought on one item before the others are ready for judicial disposition? This court has already touched upon each of these issues.

 Our stress has been upon the concept that, ordinarily, no more than one judicial claim should flow from one indivisible contract. Separate suits on individual items have been discountenanced as wasteful and burdensome. Myerle v. United States, 31 Ct.Cl. 105, 133 (1896)[14]; Joplin v. United States, 89 Ct.Cl. 345, 356, 363 (1939); Holton, Seelye & Co. v. United States, 65 F.Supp. 903, 906, 106 Ct.Cl. 477, 499 (1946). More specifically, it has been said that "as a general rule, a cause of action or a claim under a contract does not ac-

rue piecemeal and that where the contract contains a provision * * * with reference to the time when the contract shall be regarded as finally concluded the statute of limitation with reference to bringing suit does not begin to run until that date" (Austin Eng'r Co. v. United States, 88 Ct.Cl. 559, 564 (1939)); that "it was not intended by Congress that section 156 of the Judicial Code, supra, [Section 2501 of Title 28, our limitations provision] should be interpreted to require a multiplicity of suits on various items of a claim arising under an entire contract", but rather that "all rights of the parties under the contract" are to "be heard and determined at the same time and in one suit" (Holton, Seelye & Co. v. United States, 65 F.Supp. 903, 906, 106 Ct.Cl. 477, 499 (1946)); and that "a suit to recover increased compensation for the performance of contracts predicated upon the terms of contracts, does of necessity involve whatever claims which may be asserted as due under the contracts" (Electric Boat Co. v. United States, 81 Ct.Cl. 361, 367 (1935), cert. denied, 297 U.S. 710, 56 S.Ct. 573, 80 L.Ed. 997 (1936)).[15] In addition, we have warned, in contract cases and in others, that a claimant who splits his cause of action may have to give up the part on which he fails to sue the first time. Baltimore & Ohio R.R. Co. v. United States, 52 Ct.Cl. 468, 478 (1917); International Curtis Marine Turbine Co. v. United States, 56 F.2d 708, 710, 74 Ct.Cl. 132, 137–138 (1932); Electric Boat Co. v. United States, 81 Ct.Cl. 361, 367–368 (1935), cert. denied, 297 U.S. 710, 56 S.Ct. 573, 80 L.Ed. 997 (1936); Tertel-

14. "If each time such a point arises and is decided adversely to the contractor he must forthwith begin the prosecution of his remedy against the Government, the parties as well as the courts would be subject to great and unnecessary labor and expense in adjusting petty difference[s], which could more economically and advantageously be settled in a single action brought after completion of the work."

15. Contracts which are divisible or severable for purposes of final payment are

in a different class. See Pennsylvania Coal & Coke Corp. v. United States, 70 F.Supp. 136, 140, 108 Ct.Cl. 236, 247–248 (1947); Pacific Maritime Ass'n v. United States, 108 F.Supp. 603, 608, 123 Ct.Cl. 667, 677–678 (1952). It is also possible that separate phases of a contract may be so independent of one another, functionally or as the parties have treated them, that each phase should be dealt with as if it came under a separate contract.

ing v. United States, 334 F.2d 250, 254, 167 Ct.Cl. 331, 338 (1964); Kutz v. United States, 168 Ct.Cl. 68, 73–74 (1964).

On the basis of these considerations, the court dealt with the limitations status of a "breach of contract claim" which is combined with "disputes-type" claims under the same contract in *Austin Eng'r Co.* and *Holton, Seelye & Co.*, supra. In the former, the contract provided in Article 16(d) for payment of the final amount after determination by the contracting officer of questions arising under the contract and the amount properly "due"; one holding of the decision was that limitations did not run until that official had made his "determination and decision." With respect to items which did not have to be submitted for decision by the contracting officer, the court first said (88 Ct.Cl. at 563):

> No item of a claim under the contract with respect to which no payment had been made became payable, in view of Art. 16(d), until the time contemplated by that section. And this is true, notwithstanding some part of the claim reserved for suit relates to unliquidated matters. Plaintiff was not required to institute suit prior to the date when the claim became payable, and the statute of limitation did not begin to run until the time when payment became due under the contract.

In explanation, the opinion later added (88 Ct.Cl. at 563–564):

> If it be said that certain items of plaintiff's claim set forth in its petition relating to extra costs and expenses alleged to have resulted from extra work not contemplated by the contract are in the nature of unliquidated damages which a contractor is not, for the purpose of suit, compelled, first, to submit to the contracting officer, it is sufficient here to say that, as a general rule, a cause of action or a claim under a contract does not accrue piecemeal and that where the contract contains a provision, such as Art. 16(d), with reference to the time when the contract shall be regarded as finally

concluded the statute of limitation with reference to bringing suit does not begin to run until that date. We think that article contemplated that whatever claim plaintiff had in connection with the contract should become due in the sense of payable at the time mentioned, which, in the case at bar, was July 9, 1930 [the date when the contracting officer made his determination].

This was a square ruling that for limitations purposes *all* judicial claims with respect to the contract—both those required to be submitted for administrative decision, and the others which did not have to go through administrative channels—accrued at the time of the administrative decision, so that the time period did not start until that date for any item or sub-claim.

In *Holton, Seelye & Co.*, the court referred, in dictum (65 F.Supp. at 907, 106 Ct.Cl. at 500–501), to "a case where, by reason of certain stipulations in the contract, the right of the contractor to sue and the jurisdiction of the court are conditioned upon compliance with a specified administrative procedure requiring a decision by the contracting officer and by the head of the Department, on appeal." The opinion observed that such a "situation could not, of course, arise in connection with a claim for unliquidated damages" [i. e. what we would call a "breach of contract claim"], and then went on:

> Such a claim requiring administrative decision [i. e., a claim "under the contract"] might arise at or near the end of the work and yet not be ripe for suit until the required procedure had been complied with and a decision had upon such item, notwithstanding all work required by the contract had been completed and accepted. A suit on such a claim, if rejected, could be brought within six years from the date of final decision thereon; however, if suit should be instituted on other claims for damages, changes, extra work, etc., under the contract, which claims accrued at an earlier date

upon completion and final acceptance, the contractor, in order to avoid splitting his cause of action, would be required to bring such later accruing claim into the case for decision if such accrual should occur before the suit on other items of the claim under the contract should be decided.

As we read this remark, it says, first, that limitations does not ordinarily begin for claims required to be submitted to the administrative process until the administrative decision; second, that suit *may* previously be filed on other items ready for court adjudication (whether those items be "breach of contract claims" or "claims under the contract" previously disposed of by the administrator); and, third, that *if* such a prior suit is brought, the later-ripening item must be brought into that suit (if possible)—in order to avoid splitting the single cause of action connected with the contract—and cannot be held for a separate, subsequent, suit.[16] The court did *not* say that the earlier suit *had* to be brought (to avoid the time-bar on the earlier items) or that the contractor could not wait until the later administrative determination to file suit on all the contractual items at the same time. In a word, the court did not purport to overrule *Austin Engineering*, but instead to treat with the different problem where the contractor chooses to bring his action after some items have become qualified for suit but before administrative determination of all of the sub-claims "under the contract."

Reading them all together, these opinions show, we think, that where a contractor has both "disputes-clause" items and "breach-type" claims under a single contract, the following standards have controlled in this court: (i) there should be only one suit to enforce the various claim-items; (ii) the contractor *can* bring suit on the ripened "breach-type" items before completion of the administrative process on the "disputes-clause" items, but if he does so he may well lose the latter claims unless he includes them (by proper amendment, if necessary, as they mature) in his court action; *but* (iii) the contractor need not file suit on the "breach-type" items until after the end of the administrative process, when all the items have ripened and can be included in the one petition. In sum, our rule has been that the time-bar will not fall until six years after the administrative determination, but suit can be filed earlier, with the plaintiff taking the risk that he may thereby split his cause of action.[17]

### III

In Parts I and II, we have re-travelled the course of this court's past decisions on limitations for contract claims against the Government. Now we must consider, at the defendant's invitation, whether to take a new road.

1. The Supreme Court's rulings on limitations in Tucker Act cases (including under that Act our jurisdictional provisions (now 28 U.S.C. § 1491 et seq.) and our limitations statute (now 28 U.S.C. § 2501)) do not compel or suggest a holding that the time period runs from the date of completion (or some comparable point). Those decisions hold that the limitations bar is jurisdictional for suits against the United States, and cannot be waived, varied, or lengthened except in accordance with an Act of the Congress. See, e. g., Kendall v. United States, 107 U.S. 123, 125, 2 S.Ct. 277, 27 L.Ed. 437 (1882) (plaintiff unable to sue by reason of aid he gave to the Confederate side); Finn v. United States, 123

16. Electric Boat Co. v. United States, 81 Ct.Cl. 361, 367–368 (1935), cert. denied, 297 U.S. 710, 56 S.Ct. 573, 80 L.Ed. 997 (1936), had earlier held to the same effect.

17. There is nothing incongruous in a rule that suit *can* (but need not) be filed on an item before the limitation period commences. "Courts have long since rejected the mechanical concept that in all cases the limitations period necessarily starts the very moment that a suit can be brought." Kossick v. United States, 330 F.2d 933, 936, 7 A.L.R.3d 726 (C.A. 2, 1964), cert. denied, 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44.

U.S. 227, 232–233, 8 S.Ct. 82, 31 L.Ed. 128 (1887) (court must notice limitations even though not pleaded as a defense); United States v. Greathouse, 166 U.S. 601, 602, 17 S.Ct. 701, 41 L.Ed. 1130 (1897) (Tucker Act did not repeal statutory tolling provisions); United States v. Wardwell, 172 U.S. 48, 52, 19 S.Ct. 86, 43 L.Ed. 360 (1898) (running of limitations on certain lost or destroyed United States checks); Soriano v. United States, 352 U.S. 270, 274–275, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957) (pursuit of non-mandatory administrative remedy).

 But the Supreme Court's opinions underlining the jurisdictional nature of the statute do not tell us, either directly or by implication, that the claim necessarily ripens prior to the exhaustion of a *mandatory* administrative remedy. Whether or not the time-bar is jurisdictional is relevant to the Government's power to waive the defense, but it has little bearing on the issue of when the claim matures. That depends on other considerations, not on the status of limitations as a condition precedent to suit. It is fully consistent with the jurisdictional character of 28 U.S.C. § 2501 to hold that all events fixing the Government's liability have not occurred, and the contractor cannot properly demand payment, until the final administrative determination. The Disputes clause mechanism is not an attempted administrative waiver of a claim which has already accrued; it is, rather, a condition precedent to liability, an essential step (where required) on the way toward the qualification of the cause of action for judicial consideration. Soriano v. United States, supra, did not take any different view. The majority of the

Court held there that the special administrative remedy for Philippine claims was not mandatory and therefore not a prerequisite to suit (352 U.S. at 274–275, 77 S.Ct. at 272, including fn. 6); only the dissenting Justices considered that process mandatory (352 U.S. at 277, 279, 77 S.Ct. at 274, 275).[18] Under the Tucker Act, the Supreme Court has never indicated that a claim accrues for limitations purposes before the necessary administrative steps have been taken. Cf. United States v. Clark, 96 U.S. 37, 43–44, 24 L.Ed. 696 (1877); United States v. Taylor, 104 U.S. 216, 222, 26 L.Ed. 721 (1881).[19]

 2. Free of any mandate from the Supreme Court, we can reevaluate for ourselves the new position now advanced by the Government as against that on which this court has stood for many years. In the case of an item required by the contract to be submitted to a Board of Contract Appeals or other administrative tribunal (see Part I, supra), fundamental principle seems to us to impel rejection of the new approach and to call for continuance along the hitherto-accepted path. In the first place, the contractor has no right to demand any money on this "claim" until the administrative procedure is finished; he has bound himself to that course and has in effect agreed to convert a breach of contract claim to one for relief under the contract. See United States v. Utah Constr. & Mining Co., 384 U.S. 394, 404 n. 6, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). The Board's action is integral to the converted claim, and there can be no judicially cognizable injury, no violation of the contract, no claim for court relief, until the Board has acted or had

18 The Government expressly argued to the Supreme Court in *Soriano* that the administrative remedy was *not* a prerequisite to judicial relief.

The defendant also cites Unexcelled Chemical Corp. v. United States, 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953), but that case dealt with the Walsh-Healey Act and its non-mandatory administrative procedure. Under that Act the Government could bring suit, if it wished,

without following the administrative route. The cause of the action, the Supreme Court held, was created when the contractor illegally employed minors, not when the Secretary of Labor determined that this was so.

19. Later in this opinion we distinguish McMahon v. United States, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951), a case under the Suits in Admiralty Act.

a chance to act. Cf. Friedman v. United States, 310 F.2d 381, 385, 388–389, 159 Ct.Cl. 1, 8, 13–14 (1962), cert. denied, Lipp v. United States, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). An administrative body has been interposed between the claimant and the court, with the function of *deciding* all or part of the claimant's entitlement. When the matter comes to court, the judicial proceeding necessarily revolves around the administrative determination, and not merely the underlying circumstances. The administrative intervention is not simply a procedural step (as in McMahon v. United States, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951), infra) but a prime and operative element in the case.

This brings us to the Wunderlich Act, 41 U.S.C. §§ 321, 322, which supplies a related reason why limitations should not start until an administrative decision has been had. Under that statute, no suit may be maintained unless the contractor can say that the final administrative decision is arbitrary, capricious, fraudulent, grossly erroneous, not supported by substantial evidence, or erroneous in law. Clearly, a plaintiff cannot aver any of those things until the decision has actually been rendered; he must await the determination before he can attack it.[20] To say that he must

bring suit even though the Board has not yet acted is to require him to file his petition here when he cannot fulfill the requirements of the Wunderlich Act for seeking relief, and indeed before he can say that he has "suffered any damages" (Terteling v. United States, 334 F.2d 250, 254, 167 Ct.Cl. 331, 338 (1964)) —since the Board can and may give him full recompense.[21] The final component of the contractor's injury is the failure of the Board to act as it should—that is the ultimate breach. For that reason, as we have said, he cannot properly demand payment from the Government until the administrative remedy has been pursued; and the right to demand payment has, from the beginning, been the hallmark of accrual of a claim in this court.

The net of it is that the claim cannot logically mature for limitations purposes, in our judgment, before the plaintiff has a proper cause of action to allege in court—a claim which is proof against a motion to dismiss—and the time period does not run until the claim ripens in that sense. Cf. Eastman Kodak Co. v. United States, 292 F.2d 901, 907, 155 Ct.Cl. 256, 267 (1961); Kellogg-Citizens Nat'l Bank v. United States, 330 F.2d 635, 639–640, 165 Ct.Cl. 452, 459 (1964).[22]

20. Our Rule 14(b) requires that all averments "of action alleged to be arbitrary, capricious, or so grossly erroneous as to imply bad faith, the circumstances constituting fraud, mistake, or arbitrary, capricious, or erroneous action shall be stated with particularity." This rule (and its predecessor) have often been enforced at the instance of the defendant. See, e.g., P.L.S. Coat & Suit Corp. v. United States, 180 F.Supp. 400, 148 Ct. Cl. 296 (1960); United Foundation Corp. v. United States, 158 Ct.Cl. 41, 42–43 (1962).

21. Defendant would have the contractor file suit after the completion date and while the administrative procedures are still pending, and then have the suit in this court suspended pending exhaustion of the administrative remedy, with appropriate amendment to the petition filed after completion of the agency proceedings.

22. We do not read the legislative history of the Wunderlich Act as showing that Congress wished the judicial claim to accrue prior to the administrative determination. The House Committee reports (see Cosmopolitan Mfg. Co. v. United States, 297 F.2d 546, 549, 156 Ct.Cl. 142, 146–147 (1962)) said that the Act created no new "rights that a contractor may not have had prior to its enactment, with the exception of the standards of review therein prescribed", and referred to the six-year jurisdictional statute of limitations. The Congress clearly did not want to *add* to the existing limitations period, but there is no suggestion at all that Congress wished to change the pre-existing rule in this court that the claim accrues upon exhaustion of a mandatory administrative remedy, including the obligatory "disputes" mechanism. That rule existed here at the time when the court (prior to United States v. Wunderlich,

There is, in addition, no great practical difficulty in adhering to this theoretically and historically sound position. Defendant complains that many years can and do elapse between the acts or conditions from which the claim springs and the judicial determination; that the administrative process is sometimes delayed unduly; and that evidence will grow stale or disappear long before the judicial hearing. The answer is that, with respect to these "disputes-clause" items, the trials will all be had, not in court but before the Boards of Contract Appeals—pursuant to United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963); United States v. Utah Constr. & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); and United States v. Anthony Grace & Sons, 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966)—and we see no practical difference whatever between having them held in the administrative tribunals before suit is filed and holding them there after the beginning of the suit but while the case here is suspended in limbo. If there are delays in the administrative proceedings, the contracting parties (especially the Government) and the procuring agencies (as contracting units and also as parts of the governmental system) can fashion the cure by contract provisions, by administrative regulations, and by internal supervision. Cf. Moran Bros., Inc. v. United States, 346 F.2d 590, 171 Ct.Cl. —— (1965). It is suggested that, if suit had to be filed while administrative proceedings were still pending, this court could and would undertake to supervise the course of those proceedings, but we cannot see that the court would properly take any such steps which the Government could not, more easily, take for itself. And on the defendant's view there would be many more cases lying limply on our docket, awaiting administrative determination, which we could neither process further nor effectively call to life.[23]

Nor will the defendant be harmed, in the administration of its contractual records or its efforts to preserve the evidence, if we continue to apply the traditional rule. The United States has known for decades that contract suits will be timely in this court if they are filed within six years after the administrative determination, and has probably acted on that assumption in keeping records and retaining evidence. On the other hand, to say abruptly at this moment that limitation runs from the contract's completion, regardless of subsequent mandatory administrative proceedings, would undoubtedly cut off scores of contractors who, relying on our past decisions, have waited to bring suit until the ending of the administrative process. There is no adequate reason to disrupt these justified expectations.[24]

342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951)) was applying the same standards of review as were later incorporated into the Wunderlich Act. The House Committee did not say or intimate that under the new statute the claim would accrue upon completion of the contract, or at some other stage before the administrative decision. On the contrary, the assumption was, we think, that the same rules as to limitations would be applied as in the past.

23. As the Third Circuit said in Northern Metal Co. v. United States, 350 F.2d 833, 839 (1965): "The dockets of the courts are too crowded for Congress to have intended that suits must be brought while the governmental tribunal is engaged in ascertaining the facts which will determine whether the Government will pay the claim." Similarly, the dissenting judges in Crown Coat Front Co. v. United States, 363 F.2d 407, 416 (C.A. 2, decided June 22, 1966), pointed out that such a procedure "would have the unfortunate effect of increasing the burden of the district courts by causing still more crowding of already crowded dockets with lawsuits which will languish for years during the pendency of administrative proceedings, and which in all probability will never come up for trial."

24. Where there has been more than one determination under the contract by the Board of Contract Appeals, the statute ordinarily runs, with respect to all "claims under the contract", from the last such decision. See Conn v. United

3. The instance of the "breach claim" brigaded with a "claim under the contract" (see Part II, supra) is not so clearcut, but we think nevertheless that there are insufficient grounds for a change from our prior practice. For reasons of judicial economy, convenience, and fairness to litigants, it is important to retain the principle that one nondivisible contract normally gives rise to only one claim, not to a succession of individual-item claims with all the burdens they would bring and problems they would entail. Cf. United Mine Workers v. Gibbs, 383 U.S. 715, 724–725, 86 S.Ct. 1130, 16 L.Ed. 218 (1966). If this salutary notion that one contract leads to one claim is kept, and if the time period on the "breach claim" runs from contract-completion, the plaintiff could well be forced to sue too early to include his "disputes-clause" claims even by amendment, and might then lose them. And even if all of these claims "under the contract" could ultimately be included in the litigation as they matured, there would be little benefit from insisting on the earlier filing. In all likelihood, piecemeal adjudication under the umbrella of one over-all case number would simply take the place of piecemeal adjudication through a series of separate cases. True, "breach claims" are theoretically triable in court, not before the administrative body, and that could be cited as a reason for seeking an earlier court trial before evidence stales. The fact is, however, that "breach" items are often related in their facts to "claims under the contract", and the possibility of losing evidence be-

cause of the longer delay before filing is much lessened by the rule of United States v. Utah Constr. & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).[25] In any event, this same close interrelationship would normally counsel —even if suit had to be brought on the "breach claim" within six years of completion—against having a court trial of the "breach claim" proceed contemporaneously with the administrative hearing on the connected "disputes-clause" issue. There would, then, be an almost equal delay, very likely, in the judicial hearing. Moreover, the defendant will probably be alerted by the administrative claims and proceedings to the existence of "breach claims", so that records can be retained and evidence preserved. On balance, the theoretical, historical, and practical disadvantages of separating the "breach claims" from the "claims under the contract", for limitations purposes, appear to us to outweigh any practical reasons for adopting that position.

4. In States Marine Corp. v. United States, 283 F.2d 776 (1960), the Second Circuit had a maritime contract (a space charter) and a libel pursuant to the Suits in Admiralty Act. The libelant carried government-owned cargo under a charter providing that the Government would pay for any damage to the vessel or its equipment caused by the act or neglect of the Government, its agents or contractors, during the loading and unloading of the cargo, if written notice specifying the damage were given to the Government or its authorized representative before the ship sailed. The charter also contained the standard Disputes clause. The

States, Ct.Cl., 366 F.2d 1019, decided this day. That is implicit in the teaching of Austin Eng'r Co. v. United States, supra, 88 Ct.Cl. 559, 563–564 (1939), and Holton, Seelye & Co. v. United States, supra, 65 F.Supp. 903, 905–907, 106 Ct.Cl. 477, 498–501 (1946), and has been, we believe, the general understanding based on the notion that claims under the contract should not be split and prosecuted piecemeal.

We do not now decide whether, once there has been a decision on the merits of the claim by the Board of Contract

Appeals, the beginning of limitations is further deferred by a remand to the contracting officer to determine the actual amount of the award. See United States Steel Corp. v. United States, Ct.Cl., 367 F.2d 399, decided this day.

25. The Supreme Court pointed out in *Utah Construction*, 384 U.S. at 413, 415–418, 86 S.Ct. 1545, that more and more breach of contract claims are being disestablished through the fashioning of additional contract adjustment provisions like the Suspension of Work article.

particular claim was that, during discharge of the cargo at Inchon, Korea, a portion of the vessel's "fitted sweat battens" was destroyed by longshoremen retained by the Government; a written damage report was tendered by the libelant, before the vessel sailed, to the U.S. Army officer in charge of the unloading, but he refused to receive it; the libelant then mailed the damage reports. More than sixteen months later the company filed a formal claim with the contracting officer who disallowed it on the ground that no proper written notice had been given; the Armed Services Board of Contract Appeals affirmed, holding that the notice to the Army officer was not notice to the Government or its authorized representatives. The libel in the district court was filed more than two years (the limitations period of the Suits in Admiralty Act, 46 U.S.C. § 745) after the incident at Inchon but considerably less than two years after the decision of the ASBCA. The Court of Appeals held the suit barred on the grounds that (i) the cause of action accrued when the damage was done at Inchon, not upon the ASBCA's determination, and (ii) the running of the time-bar was not tolled or suspended during the period of administrative consideration. The court thought that the libelant could have protected itself, while the administrative process was going on, by instituting a "protective libel."

The Third Circuit, in Northern Metal Co. v. United States, 350 F.2d 833 (1965) —also a maritime case, not under the Tucker Act—agreed with the Second Circuit in the first holding but disagreed on the second, ruling that the limitations time was suspended while the controversy was pending before the contracting officer and the ASBCA. In Northern Metal

the libelant had a contract (including a Disputes clause) to perform terminal stevedoring and processing operations for the Army, and the dispute revolved around a small claim (unexplained in the record). The contracting officer decided against the contractor and the ASBCA affirmed. Suit was filed more than two years after the plaintiff's invoice covering the amount due, but less than two years if the period of administrative consideration was subtracted. Because of the latter fact, the Third Circuit held the libel timely.

In our view, two main aspects of the States Marine and Northern Metal decisions prevent their being precedents on the issues now before us. The first is that in both cases it is unclear whether the questions resolved administratively were "breach claims" or whether they arose "under the contract" within the understanding of United States v. Utah Constr. & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). Each libelant argued that it was required to appeal to the Board of Contract Appeals, but there is nothing in the opinions indicating that they were right in that contention; the unexpressed assumption seems to have been that all factual issues connected with the contract were required to go through the "disputes" procedure even though no adjustment clause of the contract (such as the changes, changed conditions, or suspension-of-work article) gave the ASBCA the right to grant relief; at the least, there is an absence of any suggestion that such specific relief could be awarded under the contract.[26] It may well be that both Courts of Appeals were led to believe that the claim accrued at the time of the happening or of the denial for payment because, in each case, the cause of action

---

**26.** In States Marine the claim was for damage to the ship as a result of activities of longshoremen; this seems the kind of damage claim which is not normally the subject of an "equitable adjustment" or of relief under a specific contract clause. The nature of the claim in Northern Metal is not stated in the Court of Appeals' opinion or in that of the district

court, 230 F.Supp. 38 (1964), and seems not to have appeared in the record. The Government first paid all that was asked by the libelant under the stevedoring and processing contract, and later deducted $530.96 from the payment on a subsequent contract on the ground that there had been an overcharge of that amount on the former contract.

was in fact a "breach" claim which arose at that time or on completion, and not after the administrative determination (which in those circumstances would not have been the mandatory remedy the plaintiffs insisted it was).[27]

The second, and more important, factor differentiating both *States Marine* and *Northern Metal* from the cases now before us is that the Courts of Appeals' litigation arose under the Suits in Admiralty Act, which has a very different history from the Tucker Act. Both the Second and Third Circuits relied primarily on McMahon v. United States, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951) —a Suits in Admiralty Act decision which itself rested on the particular history of that statute. *McMahon* was an action by a seaman for damages for injuries resulting from negligence and unseaworthiness, as well as for maintenance and cure. The Supreme Court held that the two-year period fixed in the Suits in Admiralty Act ran from the date of the injury rather than the time when the claim was administratively denied, even though a later statute (the Clarification Act of 1943) provided that demands like that of McMahon, "* * * if administratively disallowed in whole or in part * * *" may be enforced pursuant to the Suits in Admiralty Act. To us the significant aspect of the Supreme Court's opinion was the special reason it gave for holding that the period of limitation was always to be computed from the date of the injury. The Court pointed out (342 U.S. at 27, 72 S.Ct. at 19) that the Suits in Admiralty Act "was enacted several years before suits such as the present, on disallowed claims, were authorized. Certainly during those years the limitation depended upon the event giving rise to the claims, not upon the rejection. When later the right to sue was broadened to include such claims as this, there was no indication of any change in the limitation contained in the older Act." The court also observed (342 U.S. at 27, 72 S.Ct. at 19) that "Since no time is fixed within which the seaman is obliged to present his claim, under petitioner's position he would have it in his power, by delaying its filing, to postpone indefinitely commencement of the running of the statute of limitations and thus to delay indefinitely knowledge by the Government that a claim existed. We cannot construe the Act as giving claimants an option as to when they will choose to start the period of limitation of an action against the United States."

We think that neither of these grounds applies to the Tucker Act (which we take as including 28 U.S.C. § 1491 and its forerunners). That statute, unlike the Suits in Admiralty Act, has not, until very recently, been construed by any court as legislatively establishing the beginning of the limitations period in contract cases as the completion of the work or the earlier date of the occurrence. As shown in Part I, supra, when the parties agreed that the contractor could not properly demand payment until a designated officer had passed on the matter, the statutory period commenced upon that later determination. Smith Courtney Co. v. United States, 46 Ct.Cl. 262, 266–267 (1911). There were other instances in which the claim was held to mature at some point other than the completion date. And this court has reiterated, many times, that the time-bar depends upon the particular terms, conditions, and practices of and under the contract. In other words, the right to sue under the Tucker Act has not been held to have necessarily been set by Congress at some particular stage, regardless of the parties' agreement; almost from the beginning, the statute of limitations in that Act has adjusted itself to the circumstances of the particular contract, emphasizing the

27. It is noteworthy that in *States Marine* the court did not advert to the possibility that the cause of action arose, not when the particular damage occurred, but on completion of the libelant's work under the charter. Apparently the Government did not concede, as it does here, that the claim would not accrue for limitations purposes prior to completion-and-acceptance. In *Northern Metal* the posture of the case was such that the claim necessarily arose after completion.

right to demand payment and not some other point in the course of the contractual transactions.[28]

■ Similarly, the contractor in the cases before us (and the mass of such cases) is not left at large to present his claim administratively whenever he likes. The Disputes clause does not itself fix a time within which a disputed issue of fact must be presented to the contracting officer, but that is not ordinarily true of the various substantive contractual clauses which lead to equitable adjustments or comparable relief under the contract. Those specific clauses usually have built-in time limits,[29] and where no specific period is established in the contract the contractor cannot delay unreasonably. Cf. Dawnic Steamship Corp. v. United States, 90 Ct.Cl. 537, 579 (1940). Neither this court nor the administrative tribunals have had any great difficulty in handling belated claims by contractors under the various contract-adjustment articles. Contractors have not been able to extend the limitations period unduly by unilaterally postponing the commencement of the administrative process.[30]

For these reasons, we think that *States Marine* and *Northern Metal*, dealing as they do with the Suits in Admiralty Act and apparently a different type of claim, are distinguishable from suits like the present and the related cases under the Tucker Act. We do not believe the principle of those opinions should be extended

to our class of case which is largely governed by a separate history and different considerations.

5. After the present case and its companions (see footnote 3, supra) had been submitted to this court for decision, the Second Circuit decided (on June 22, 1966) Crown Coat Front Co. v. United States, 363 F.2d 407, pet. for a writ of cert. filed, 87 S.Ct. 87, Oct. Term 1966, No. 371, a Tucker Act litigation raising the problem of limitations where the administrative remedy appears to have been mandatory under the contract. The majority of the court extended the rule of *States Marine*, supra, to this class of case; Judge Waterman wrote for three other members while Judge Friendly concurred solely on the authority of *States Marine*. Judge Anderson, dissenting with three colleagues, agreed with the majority that the claim accrued on completion, but felt that limitations was tolled during the administrative process (and in this respect would have overruled *States Marine*). None of the judges felt that there was any relevant distinction between the Tucker Act and the Suits in Admiralty Act.

We have already given our reasons for believing that there is a vital historical difference between the two statutes. Prior to *Crown Coat Front Co.*, the pertinent limitations litigation under the Tucker Act was in this court,[31] and this

28. *McMahon* also differs significantly from the present case in that the administrative determination in that instance was not given any weight in court while administrative findings of fact in Disputes-clause cases are required to be accorded a special deference. The administrative disallowance in *McMahon* was a mere way-station on the road to court.

29. The standard Changes clause in construction contracts provides that claims for adjustment must be asserted within 10 days; the Changed Conditions clause calls for an immediate notification to the contracting officer; the Delays-Damages clause contemplates a notice within 10 days of excusable delays; the Price Adjustment for Suspension, Delays, or In-

terruption of Work clause sets 20 days as the normal period. See United States v. Utah Constr. & Mining Co., 384 U.S. 394, 397–399 n. 1, 416 n. 14, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

30. The Government has it within its power to set reasonable limits on the presentation of "claims under the contract" to the contracting officer. Cf. Moran Bros., Inc. v. United States, 346 F.2d 590, 171 Ct.Cl. — (1965).

31. So far as we are aware, there are no reported holdings or statements like *Crown Coat Front Co.* in the courts of appeals or district courts. The recent litigation on this subject in those courts has been under the Suits in Admiralty Act. Brister & Koester Lumber Corp. v.

court has uniformly held, as pointed out in Part I, supra, that the time-bar-period starts with the obligatory administrative determination. For this reason, and the others we have mentioned, we do not think that McMahon v. United States, supra, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951)—which was based on the particular history and practice under the Suits in Admiralty Act—governs Tucker Act cases. We have also given additional reasons for adhering to this court's prior position. We have not been persuaded, with all respect, to alter our views by the *Crown Coat Front* opinions. Though we agree with many of the observations of the dissenting judges, we consider that their grounds more appropriately support the position that in these Government contract cases limitations commences with the administrative determination—where one is duly had—rather than that the administrative process tolls a limitations period which has already commenced at the completion of the contract.

▆ 6. We add, because it is directly pertinent to this and the companion cases, that, if we are wrong in our conclusion as to when the limitation period starts, we would then agree with the Third Circuit in *Northern Metal* and with the dissenters in *Crown Coat Front* that the mandatory administrative process does, at the least, toll the running of the statute. It is difficult to read unexpressed tolling provisions into the Tucker Act's limitation period once it has begun to run (see Soriano v. United States, 352 U.S. 270, 273–274, 275–276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)), but on the whole we join with the other judges in thinking that this exception should be made (if it be necessary). "Since the Government through its contracting officer and the Armed Services Board of Contract Appeals not only was aware of the claim but was engaged in deciding its merits, it would be harsh and out of harmony with the purpose

and intention of Congress to hold that the statutory time ran during the pendency of the administrative proceedings." Northern Metal Co. v. United States, supra, 350 F.2d at 839. "Looking to the scheme of the Tucker Act, 28 U.S.C. § 1346(a) (2) (1964 ed.) [and also 28 U.S.C. § 1491], and the liberal purpose which it evinces to permit suits based upon contract claims to be brought against the Government, it would be anomalous to hold that the Government, through its power to make regulations, could require the inclusion in all of its thousands of procurement contracts of a mandatory provision that claims must first be processed through its administrative channels, and, by proceedings long drawn out, effectively defeat the rights of claimants to present their claims to a court of law." Judge Anderson, dissenting in Crown Coat Front Co. v. United States, supra, 363 F.2d at 415.

▆ We concur that this is so when the item is a "claim under the contract", and we think that it is equally so, because of the principle that one indivisible contract normally gives rise only to one cause of action, when the item is a "breach claim" under a contract which has also spawned "disputes-type" items in litigation.

IV

▆ We conclude by fitting the general principles we have been discussing to the present case. Admitted claims "under the contract" were taken by the plaintiff (and the Government) to the Atomic Energy Commission which made its determination on April 23, 1964. Suit was begun here on October 16, 1964, well within six years of the Commission's decision. We indicated at the outset that the first cause of action (for allegedly improper termination for default)— which alone is involved in the present motion by the defendant—was not treated by the parties or the Commission's hearing examiner as falling "under the contract" or within the administrative power

United States, 88 U.S.App.D.C. 197, 188 F.2d 986, 988 (1951), seems to imply for the Tucker Act the same limitations rule

as this court has been following (at least for "claims under the contract").

to grant relief. The other two causes of action concededly come "under the contract". But, as stated in Parts II and III, supra, we hold that there was a single cause of action on the contract as a whole, and the judicial claim did not accrue for limitations purposes until April 23, 1964, even as to "breach" items not subject to the administrative process.

 If the proper rule is that limitations is merely tolled by the administrative process, plaintiff's petition is still timely. The Government says that the contract was completed on October 6, 1958; suit was begun (on October 16, 1964) a few days more than six years later. The administrative proceedings before the Atomic Energy Commission consumed much of this time. Subtracting the period of administrative consideration would leave ample room.[32]

We do not decide, however, whether the plaintiff is correct in urging that the first cause of action was not subject to the administrative process under the contract (cf. American Marine Upholstery Co. v. United States, 345 F.2d 577, 170 Ct.Cl. 564 (1965)), nor do we decide whether, on the assumption that plaintiff is wrong in that view, the defendant is estopped (from arguing that plaintiff must now complete the administrative process) by the conduct of the Government representatives at and after the time the Atomic Energy Commission's hearing examiner announced that the present claim was beyond the administrative jurisdiction and could not be considered. All we decide today is that the plaintiff's claim in this court is not barred by limitations.

The defendant's motion for partial summary judgment is denied and the case is returned to the trial commissioner for further proceedings.

32. If the first cause of action is a true "breach claim" and if the administrative proceedings on the other claims would not toll the statute as to this claim, the first cause of action would be barred unless the plaintiff is correct that (1) the completion date was later than October 6, 1958, or (2) limitations did not start until the payments in 1959 and 1960, or (3) the defendant is somehow estopped by the way the claim was handled administratively. We do not pass upon these arguments.